CHARLES R. WHITFIELD, *et al.*, v. BERTHA WHITFIELD.

172 So. 711.

Opinion Filed February 10, 1937.

Rehearing Denied March 5, 1937.

*John H. Carter* and *John H. Carter, Jr.*, for Appellants;
*Carter & Pierce*, for Appellee.

PER CURIAM.—In this cause Mr. Chief Justice ELLIS and Mr. Justice WHITFIELD and Mr. Justice BUFORD are of the opinion that the decree of the Circuit Court should be affirmed, while Mr. Justice TERRELL, Mr. Justice DAVIS and Mr. Justice BROWN are of the opinion that the decree should be reversed. When the members of the Supreme Court, sitting six members in a body, and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the said decree should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the decree of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

Ellis, C. J., and Whitfield, Terrell, Brown, Buford and Davis, J. J., concur.

Buford, J.—The appeal here is from final decree setting aside a settlement between a widow and the heirs of an intestate, which settlement was made between the widow and the administrator of the estate representing himself and the other heirs. The heirs were the children of the intestate by a former wife.

It is the contention of the appellant that the settlement made between the widow and the administrator was valid and remained binding upon the widow; that it was fair and no advantage was taken of the widow.

It is contended by appellees that the settlement is voidable because the administrator acting for himself and other heirs gained by the settlement more than that which could have been acquired under administration and distribution of the estate as provided by law.

R. H. Whitfield died intestate in Jackson Conuty, Florida, on December 7, 1934. He was survived by his widow about 80 years of age and seven children of a former marriage. All the children were grown and none of them lived with the father and stepmother at the time of the father's death and we gather from the evidence that none of the children were living with the father at the time of his marriage to the stepmother and that they did not thereafter live with him, though this point is not material.

At the time intestate died he and his wife were living in a house on 46 acres of land which was acquired and held in the name of the wife and which the record shows was purchased with her money. Adjoining this tract there was a tract of 74 acres which belonged to the husband, but in which the wife may have invested some money. There was

also a 21-acre tract which belonged to the husband and was occupied by one Culverhouse, who had married the granddaughter of the intestate. There was also some town lots in the Town of Malone, Florida. There was personal property.

Charles R. Whitfield was the oldest son of the intestate and by agreement between the widow and other heirs he was appointed administrator. In February, 1935, the administrator obtained purported powers of attorneys from his brothers and sisters authorizing him to act for them in adjusting, compromising and settling the estate and to divide and apportion the same equitably among them in accordance with law. The authorization included authority to execute deeds and conveyances. The powers of attorneys were filed in the office of the County Judge. The spouses respectively of the brothers and sisters did not join in the execution of such powers of attorney.

The agreement for settlement and the settlement reached between the widow and the administrator was that the widow deed to Charles R. Whitfield and his brothers and sisters in fee simple, subject to a life estate reserved, all her right, title, interest, claim or demand whatsoever in and to the lands described in the deed which included the 74 acres above referred to, the 46 acres above referred to, the 21 acries above referred to and also the property in the Town of Malone and all other property of the late R. H. Whitfield, real and personal, wherever situated, and all personal property, livestock, farming implements, farm products, etc., which should be owned by the grantor, Bertha Whitfield, at her death, subject to a life estate which was reserved in Bertha Whitfield and the free use and enjoyment thereof for and during her natural life in and to all the described property in Jackson County, except 21 acres above referred to, at

her death the fee simple title to be vested in the grantees named in the deed. And Charles R. Whitfield for himself as administrator of the estate of R. H. Whitfield, deceased, and as oldest son and heir at law and as attorney in fact for John M. Whitfield, Mary A. Whitfield Kembro, L. C. Whitfield Norwood, M. A. Whitfield Hudson, Georgia Whitfield Kembro and Martha Whitfield Hardy, children constituting all the heirs at law of the said R. H. Whitfield, deceased, made, executed and delivered a deed conveying to Mrs. Bertha Whitfield, widow of R. H. Whitfield, deceased, a life estate and the possession, use and enjoyment thereof for and during her natural life the real estate described in the above described deed from Mrs. Whitfield to the heirs and also $500.00 in cash deposited in the Bank of Malone to be kept intact until the death of said Bertha Whitfield, then to be drawn by the cashier of said Bank of Malone and used to pay her funeral expenses, with the provision that interest payable on the deposit should be paid by the Cashier of the Bank to Mrs. Whitfield during her life time at the usual interest periods. It was stipulated in this deed that Mrs. Whitfield was to pay the taxes assessed against the property during her life. After this settlement was made and the deeds exchanged Mrs. Whitfield filed this suit to cancel and set aside the deeds and to have her dower apportioned to her out of the estate of her late husband, R. H. Whitfield, and upon final hearing decree was entered annulling the settlement, cancelling the deeds and decreeing the right of dower and setting aside dower, cancelling the release given by the widow to the administrator and permitting the widow to reconvey to the heirs the property they had conveyed to her in pursuance of the settlement.

We hold that it is a settled principle of law in this jurisdiction that an administrator's relationship is a fiduciary

one. It involves the handling under court supervision the property which formerly belonged to one who has departed this life, in order that creditors, legatees, distributees and other lawful claimants may receive that to which they are entitled under the law. . Opitz v. Morgan, 68 Fla. 469, 67 Sou. 67; American Surety Company v. Hayden, 112 Fla. 17, 150 Sou. 114.

It, therefore, follows that an administrator stands in the position of a trustee holding the estate in trust for the heirs, distributees and creditors and while acting in such trust capacity he cannot deal with his *cestu que* trust so as to acquire any advantage unto himself or unto another whom he represents otherwise than as administrator of the estate.

In Eddy v. Eddy, 168 Fed. 590, the Circuit Court of Appeals of the Sixth Circuit held:

"It seems to us a case in which upon its merits the complainant is clearly entitled to relief by a court of equity. Whether she is precluded by the statute referred to we shall consider later on in dealing with the several grounds taken in defense. If she had been let alone and nothing had been done to induce her to a premature conclusion, or to conceal from her the facts which would be material for her choice, it might be that her neglect to dissent from the will within the year would operate to bar her claim. But this is not that simple case. She had known nothing of the provisions of the will and nothing of the provisions of the statute, or indeed, that there was such a statute until Mr. Eddy came and the transaction was all done in a day. The statute gave her a year after the probate of the will in which to make her election. This was to give her time to learn the facts on which it would be exercised, for deliberation thereon, and to get removed from the influences of those sentiments which might unduly influence her. The executor stood, as

to her, in the relation of a trustee. It did not matter that his appointment had not yet been confirmed. It was expected that it shortly would be, and he was then acting in that character and in behalf of the estate. Moreover, all the defendants obtained, and seek to preserve, the fruit of his negotiations and bargaining with the complainant.

"The rule of equity applicable to such cases has long been settled and there has been no variation in it within the bounds of which this case might fall. In Cowen v. Adams, 78 Fed. 536, 24 C. C. A. 198, which was a case where a legatee was seeking relief from an instrument obtained from him by an executor whereby he had released his claim to his share in the estate in circumstances which made it unjust and inequitable that it should be enforced, we said, at page 552 of 78 Fed. and page 214, of 24 C. C. A.:

" 'Equity will relieve the legatee in such transactions, where he has, under a misapprehension of his legal rights, surrendered to the trustee valuable interests without any adequate consideration, especially where the situation is such that no harm will come to the interests of others. Such would be the case where the claim relates to a fund which has not yet passed beyond control. These propositions are amply sustained by authority. 1 Story Ed. Jur. No. 307, 308; 2 Pom. Eq. Jur. No. 948, 951, 955, 956, 958, 1088; Taylor v. Taylor, 8 How. 183, 12 L. Ed. 1040; Comstock v. Herron, 6 U. S. App. 629, 5 C. C. A. 266, 55 Fed. 803, and the cases there cited; Mills v. Drewitt, 20 Beav. 632; *In re* Ashwell's Will, Johns Eng. Chan. 122; Snow v. Booth, 2 Kay & J. 132; Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739.' "

On petition for certiorari to the Supreme Court of the United States the same was denied. 214 U. S. 518, 53 L. Ed. 1065.

In Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 2, page 2047, the author states the law applicable to a purchase by a trustee from his *cestui que trust* as follows:

"A purchase by a trustee from his *cestui que trust,* even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary; it is at least *prima facie* voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance, voidable. It is possible for the trustee to overcome the presumption of invalidity. If the trustee can show, by unimpeachable and convincing evidence, that the beneficiary, being *sui juris,* had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly free consent and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all knowledge or information concerning the property possessed by himself, or which he might, with reasonable diligence, have possessed, and that he has obtained no undue or inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity. The doctrine is enforced with the utmost stringency when the transaction is in the nature of a bounty conferred upon the trustee—a gift or benefit without full consideration. Such a transaction will not be sustained, unless the trust relation was for the time being completely suspended, and the beneficiary acted throughout upon inde-

pendent advice and upon the fullest information and knowledge."

The enunciations contained in the text are amply supported by numerous authorities.

In the instant case the administrator, being in law a trustee, did not meet the burden of showing "by unimpeachable and convincing evidence that the beneficiary being *sui juris* had full information and complete understanding of all the facts concerning the property and the transaction itself and the person with whom he was dealing and gave a perfectly free consent, and that the price paid was fair and adequate and that he made the beneficiary a perfectly honest and complete disclosure of all knowledge and information concerning the property possessed by himself, or which he might with reasonable diligence have possessed, and that he has obtained no undue or inequitable advantage." Neither the administrator nor the heirs had any interest, so far as this record shows, in the 46 acres upon which the intestate and his wife lived at the time of his death and there is nothing in the record to show that the children of the deceased were entitled to a deed of conveyance of this property to them. The evidence is not clear and convincing that the widow was not coerced to enter into the agreement by the fear that unless she did so she would be immediately deprived of the means of a livelihood. If this agreement had been made between the widow and one of the other heirs who was not administrator of the estate, the record, absent this condition, would not sustain a decree such as entered here, but the fact that the transaction was between the administrator acting for himself and his brothers and sisters on the one side and the aged and unadvised widow on the other hand makes a case where the duty of the trustee to the *cestui que trust* is the controlling factor. With that element in mind the

record supports the finding of the Chancellor that the equities were with the complainant.

The appellant has raised the question but has not argued it in the brief as to whether or not a court of equity can set aside dower in a case otherwise cognizable in equity. This question was presented in the case of Moore v. Price, 98 Fla. 276, 123 Sou. 768, wherein it was held:

"In Milton v. Milton, 14 Fla. 369, it was held that in the summary statutory proceedings, 'no relief other than that specially authorized can be granted. If it is desired to call into operation the general powers of a court of equity, the proceeding must be by bill.' And in Godwin v. King, 31 Fla. 525, 13 So. R. 108, it was said: "Should the powers of a court of equity be required to completely adjust the rights and interests arising in any case of this kind, resort should be had to such court by bill. There is no doubt about the jurisdiction of equity in such matters.' Brokaw v. McDougall, 20 Fla. 212, was a case where dower was allotted *in specie* in equity. In that case commissioners were appointed by the court, which appears to be the usual procedure for allotment of dower in chancery. However, it is held that in proceedings in equity, assignment of dower may be made either by directing a commission to issue, or by reference to a master. 2 Scribners Dower 170. In the Brokaw case above cited, the bill was filed for the purpose of securing a partition as between the heirs as well as an assignment of dower to the widow, if she elected to take dower. It appears to have been assumed by the parties and the court that this was a proper procedure. At least, no point was made of it. In partition proceedings the appointment of commissioners is, of course, proper, indeed generally requisite, being provided by statute. And where dower is to be assigned and partition allowed in the same

case, it is obvious that it will generally prove expedient and convenient to have both duties performed by the same commissioners."

No reversible error having been made to appear, the decreee should be affirmed and it is so ordered.

Affirmed.

DAVIS, J.—I find in the record no support in law for the decree appealed from and therefore I entertain the view that the decree appealed from should be reversed as having been arrived at on a misapprehension of the applicable rules of law as applied to the most favorable view of the facts that the evidence warrants in favor of the appellee. Briefly stated, the reasons for my conclusion are as follows:

R. H. Whitfield died intestate. Charles R. Whitfield, one of his sons, was duly appointed administrator of his father's estate and undertook the legal duties incident thereto principally at the request of the other children, as well as the request of the widow complainant in the court below.

During the course of administration a settlement of property rights was proposed and agreed upon amongst all concerned, including the widow. That settlement was duly executed and became an accomplished fact, duly evidenced by legal documents executed by the parties at interest to carry out the same. Under the terms of the settlement the widow, with full knowledge of what she was getting, took certain real and personal properties of the estate for life, and in consideration of same, in turn conveyed to the other heirs certain property she claimed as her own, reserving a life estate therein.

Some time afterward, the widow appears to have become dissatisfied with the settlement she had made, whereupon she retained counsel, brought this suit, and obtained a decree in equity setting aside the executed settlement and re-estab-

lishing her original position as widow entitled to a widow's rights in her husband's unadministered estate.

While the son who negotiated the settlement herein attacked was amongst other things the duly qualified administrator of the intestate appellee's husband's estate, he was more than that. He was a member of the deceased's family, an heir at law openly acting in his own behalf and as the duly appointed attorney in fact authorized to act for other members of the deceased's family having an interest in the settlement of the estate. All of this was fully known to the widow and she was in no respect deceived in any particular as to what was being proposed to her or as to what was about to be accomplished in the way of a settlement when she signed the papers agreeing to it.

Indeed, her half-hearted protest at the time, shortly thereafter withdrawn of her own volition, shows conclusively that she was fully aware of every feature of the settlement, but hesitated as to her own part in consummating it. In abdicating her position as widow she did so with as much comprehension of her future status under the documents of abdication as could possibly have been possessed by her, not the slightest imposition or concealment of fact being practiced to induce her to sign the papers she finally agreed to execute and did execute. The claim that she was likely ignorant of what the law would have given her had she elected to disagree to the settlement is beside the point. *Ignorantia juris neminem excusat.* Had she been as diligent in employing lawyers before the settlement as afterward, that situation would have been avoided.

Reduced to its last analysis, the decree below, and its affirmance here, rests upon the postulate that because a son and heir at law of a deceased father happens also to be the administrator of an estate, he is under such a fiduciary duty

toward the widow that a *bona fide* settlement of the decedent's estate, involving both the real and personal properties of it, is capable of being avoided by the widow after she has designedly executed her part of it and made 'it an accomplished fact, notwithstanding there has been proven no actual fraud, imposition or over-reaching in the transaction, and all parties to it are of lawful age and have given up something on their part to put it through.

While this Court has properly recognized that a trust relationship attaches to the relationship of executors and administrators toward the widow and heirs *with reference to what the executor or administrator is in duty bound to do in the performance of his functions of personal representative* of the decedent's estate, no authority can be found to support the view that a mere administrator, who is an heir at law to real estate and the known and acknowledged attorney in fact of other heirs to decedent's real estate, stands in the shoes of a guardian or legal representative of the widow, when it comes to negotiating and carrying out, open and above board, a family settlement of property rights that involves all of the decedent's estate, including his lands, in order to avoid expense and inconvenience of partition or other settlement.

The traditional feminine right of members of the fair sex to change their minds, with or without reason, on ordinary occasions, ought not to be written by this Court into our jurisprudence of equity, by sanctioning the posterior avoidance of deliberate property settlements, fairly negotiated and lawfully consummated between heirs at law to a decedent's estate, merely because of the widow's subsequently discovered dissonance and election to litigate the matter.