**SECOND NAT. BANK OF DAN-VILLE, ILL.**

v.

**DALLMAN.**

**No. 10941.**

United States Court of Appeals, Seventh Circuit.

Jan. 12, 1954.

Horace E. Gunn, Walter T. Gunn and Bookwalter, Carter, Gunn & Hickman, Danville, Ill., for plaintiff-appellant.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Sp. Asst. to Atty. Gen., John B. Stoddart, Jr., U. S. Atty., Springfield, Ill., Ellis N. Slack, A. F. Prescott, Fred E. Youngman, Sp. Assts. to Atty. Gen., Marks Alexander, Asst. U.

S. Atty., Springfield, Ill., for defendant-appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from a judgment entered by the district court on June 9, 1953, adverse to plaintiff, in an action to recover a federal estate tax paid under protest on the estate of Helen L. Abdill, deceased. Plaintiff is a trustee designated under the last will and testament of the said decedent. The portion of her estate upon which the tax was paid and for which the refund is sought is the sum of $30,000, proceeds of a life insurance policy paid by the insurer to the executor of decedent's estate for reasons and under circumstances to be subsequently related.

The district court embraced the findings of fact as stipulated by the parties, with the conclusion of law that plaintiff was not entitled to recover. From the judgment entered in conformity with such conclusion plaintiff appeals.

Helen L. Abdill died testate on September 24, 1945. At the time of her death she was unmarried, and left as her only surviving heirs Lucretia H. Michael, a niece, and Joseph G. C. Houghteling, a nephew. Decedent was the daughter of Ernest X. LeSeure, whose death occurred in April, 1925. The father in 1912 procured from Northwestern Mutual Life Insurance Company a policy of life insurance in the principal amount of $30,000, in which the decedent, his daughter, was named as beneficiary but who, by the terms of the policy, was precluded from effecting its surrender and from ever receiving any part of the principal amount.

Option "A" provided that the principal amount should upon the death of the insured be retained by the insurer during the life of his daughter (decedent), and that during such period she should receive an annuity of 3% per annum upon the principal amount thus retained by the insurer. This annuity, which amounted to the sum of $900.00 per annum, was paid to her by the insurer as directed. Option "A" also provided that "The Beneficiary * * * shall * * * have the right, with the privilege of revocation and change, to designate a Contingent Beneficiary or Beneficiaries whose interest shall be as expressed in, or endorsed by the Company on, this Policy * * *," provided, however, "No election, direction, designation, revocation or change shall be effective unless duly made in writing and filed at the Home Office of the Company (accompanied by the Policy for suitable endorsement) prior to or at the time this Policy shall become payable." And, "Unless otherwise directed by the designator and so endorsed by the Company on this Policy, the Contingent Beneficiary or Beneficiaries, if any, shall, upon satisfactory proof of the death of the last surviving Beneficiary, succeed to all the interest, rights and privileges then possessed by such Beneficiary * * *." It further provided: "At the death of the last surviving Beneficiary if there be no Contingent Beneficiary then living, or at the death of the last surviving Contingent Beneficiary occurring subsequently thereto, the amount retained by the Company under Option 'A' will be paid to the executors, administrators or assigns of such last surviving Beneficiary or Contingent Beneficiary upon due surrender of this Policy."

Decedent made no election or designation of a contingent beneficiary. She thus remained at the time of her death, as she was at that of her father, the sole and only designated beneficiary. Upon decedent's death, the proceeds of the policy were paid by the insurance company, as it was obligated by contract to do, to the executor of her estate. Decedent by her will made no mention of the insurance policy or its proceeds but provided in a residuary clause as follows: "All the rest, residue and remainder of my estate, whether real, personal or mixed, including the proceeds of the sale of the property above mentioned, I give, devise and bequeath to the

Second National Bank of Danville, Illinois, in trust however, for the following uses and purposes * * * ." The insurance proceeds thus received by the executor were paid or turned over to the Second National Bank (plaintiff in the instant action), the trustee thus designated in the residuary clause of decedent's will.

The government endeavors to support the judgment upon two provisions of the Internal Revenue Code, (1) Sec. 811(a) and (2) Sec. 811(f), Title 26 U.S.C.1946 Ed., Supp. V, Sec. 811. Sec. 811(a), so far as now material, provides for the inclusion of the value at the time of death of all property, etc., "To the extent of the interest therein of the decedent at the time of his death". Sec. 811 (f), entitled "Powers of Appointment", provides, so far as here material, "(1) Property with respect to which decedent exercises a general power of appointment created on or before October 21, 1942. To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will * * * ; but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof."

The government's main reliance is upon the first provision, that is, that the decedent at the time of her death had an interest in the insurance proceeds, not in part but to their full value. It designates the second provision, relative to the exercise by decedent of a general power of appointment, as alternative. The argument in support of these two theories is overlapping and we find it difficult to discuss either without invading the confines of the other. We think it may aid in a clarification of the situation, however, if we first discuss and dispose of the government's alternative theory. The argument in support of this theory is sufficiently epitomized in its brief as follows: "The issue here is whether the insurance proceeds passed to the ultimate beneficiaries pursuant to the provisions of the insurance contract or under a power of appointment exercised by the decedent by will. That the insurance proceeds passed to the ultimate beneficiaries pursuant to the exercise of a power of appointment by will, rather than under the terms of the insurance contract, is obvious." We understand from what is stated in other portions of the government's brief that "ultimate beneficiaries" refers to the trustee created by decedent's will. In our judgment, this reasoning, as well as the premise upon which it rests, is fallacious for the reason that the decedent had no "power of appointment" which she could exercise "by will."

■ Paragraph (3) of subsection 811 (f) defines a general power of appointment thus: "For the purposes of this subsection the term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate * * * ." The essentials requisite to pass property by a testamentary devise under a general power of appointment are stated by the Supreme Court in Helvering v. Grinnell, 294 U.S. 153, 155, 55 S.Ct. 354, 355, 79 L.Ed. 825, as follows: " * * * (1) The existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise." We think it obvious that decedent had no general power of appointment and certainly she was not endowed with power to dispose of the insurance proceeds by will. This power of appointment of which the statute and the cases speak is not something to be plucked out of the air; it must be created before it can be exercised. Decedent's power, such as it was, must be found in the insurance contract between her father and the insurance company and not elsewhere.

The salient provisions of this contract have heretofore been noted and need not be repeated in detail. It is sufficient to state that the sole and only power reposed in decedent was the right to appoint a contingent beneficiary. If this power had been exercised, which it was

not, the beneficiary thus appointed would have been entitled to take the insurance proceeds. And even the exercise of this meager power was limited, that is, it was required to be made in "writing and filed at the Home Office of the Company (accompanied by the Policy for suitable endorsement) prior to or at the time this Policy shall become payable." It thus appears plain that as a prerequisite to any valid change of beneficiary, decedent was required not only to nominate but also to take the prescribed steps in order to make such nomination effective, all to be performed prior to her death. This was not done, and as a result the proceeds were payable at decedent's death not by her direction but by that of her father as contained in the contract. There is not so much as an intimation in the contract of any right possessed by decedent to dispose of the proceeds at her death, by will or otherwise. Every vestige of right or interest which decedent had in these proceeds was extinguished by death; nothing passed from her to the executor of her estate. Any exercise of power in this respect by decedent in her testamentary capacity must have been of her own creation; it certainly was not that of her father.

We have examined the many cases called to our attention and we find none where the right to make a disposition of property, testamentary or otherwise, by power of appointment was not derived from a donor. On this point we cite as typical only a few of the many cases. In United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617, the decedent received her power of appointment from her father's will. In Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, the decedent received her power to make testamentary disposition of certain property from the will of her father. In Morgan v. Commissioner, 309 U.S. 78, 79, 626, 60 S.Ct. 424, 425, 84 L.Ed. 585 the decedent was the "donee of two powers of appointment over property held in two trusts created by her father by will and by deed." In Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 57, 62 S.Ct. 925, 86 L.Ed. 1266, the decedent had three powers of appointment, one created by his father's will, one by a deed executed by his mother and the other by his mother's will. In Estate of Rogers v. Commissioner, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134, the decedent's testamentary power of appointment was derived from the will of his father.

In the view thus expressed, there is no occasion to consider any difference resulting where a power of appointment to make a disposition of property by will is exercised and where it is not. That is so because, as we have shown, the decedent here was without power of appointment; it was wholly non-existent.

We now turn to the government's first contention, that is, that the decedent had an interest in the insurance proceeds which at her death became liable to an estate tax. On this theory the government presents a more plausible argument but, even so, we do not think it is entitled to prevail. It must be kept in mind that the annuity payments of 3% per annum upon the principal amount of the insurance received by her from the time of her father's death to that of her own are not here involved. We are concerned only with the property interest which the decedent during her lifetime had in the principal amount. Her rights therein were two in number and no more, (1) the right to require the insurance company to retain in its possession during her lifetime the insurance proceeds, the income from which she was to receive in the form of a designated annuity, and (2) the right previously discussed, to nominate, in the manner which the insurance contract specified, a contingent beneficiary. The policy was not subject to surrender and we are aware of no way by which she could have required the insurance company to pay her a single dollar of this principal. And even though she had nominated a contingent beneficiary, that beneficiary would have been entitled to no part of the insurance proceeds until after decedent's death.

The government advances theories relative to decedent's control and dominion over the insurance proceeds, which possess more novelty than merit. For instance, the government in its brief states: "From the time of her father's death in 1925, the decedent possessed not only a life estate in the fund but also the remainder interest therein of which she could not be divested except by her voluntary act." Assuming she had a life estate in the fund, which we doubt, such interest was extinguished at her death. In our view, there is no basis for the claim that she possessed a "remainder interest." After the fund had been retained and employed by the insurance company for decedent's benefit during her lifetime, it vested irrevocably and was payable either to the "executors, administrators or assigns" of the decedent or to a contingent beneficiary, depending upon whether decedent during her lifetime exercised her right to select such contingent beneficiary and made such election effective in the manner provided for by the contract. The government in its brief continues: "She could sell, pledge, or assign, in whole or in part, either her life interest or her remainder interest in the fund, or both, to anyone of her own unrestricted choice, including her creditors." If this all-inclusive description of decedent's control or right over the fund means only that she could nominate a contingent beneficiary, we agree. If it means that she had any right or control over the fund other than that, we disagree. The brief continues: "She could and did dispose of her remainder interest by will." It may be true she attempted to do so but her act in that respect was, in our judgment, futile because, for the reasons heretofore shown, it was unauthorized, she was without power to divert the fund by testamentary devise. The novelty of the argument increases as we go along. The brief further states: "In fact, the decedent possessed from the date of the death of her father all of the incidents of complete ownership of the fund save only that she could not withdraw the money from the insurance company during her lifetime." It would be more logical to state that decedent during her lifetime possessed none of the incidents of ownership; in fact, she possessed no rights relative to the fund other than those which we have previously stated.

Any attempt to analyze or discuss all the cases called to our attention would unduly burden this opinion. We shall content ourselves with referring to a few of the many. In Estate of Susie C. Haggett v. Commissioner, 14 T.C. 325, the Tax Court considered a situation where decedent's incidents of ownership were far greater than in the instant case. The court stated, 14 T.C. at page 329: "The present decedent's interest in the annuity contract was that of a life beneficiary with the power to surrender the contract and receive its then cash value, and also the power to change the beneficiaries. Neither of these powers was exercised by her during her lifetime. But a mere power with respect to property is not such an interest therein as subjects it to the provisions of section 811(a) of the Internal Revenue Code."

In discussing the estate tax provision, the court, in Y. M. C. A. v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558, stated: "What was being imposed here was an excise upon the transfer of an estate upon death of the owner. It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death."

And this court, in Mayer v. Reinecke, 7 Cir., 130 F.2d 350, 353, stated: "The estate tax is an excise upon the transfer of an estate at the death of the owner: it fixes upon the interest which ceased by reason of the death, rather than the interest to which some person succeeded on death. [Citing cases.]"

Estate of Rogers v. Commissioner, 320 U.S. 410, 64 S.Ct. 172, 173, 88 L.Ed. 134 is, like many other of the government's

cases, distinguishable, as we have noted in the discussion of the government's first theory, on the basis that the decedent was endowed by the father in his will with a "general testamentary power of appointment". This power was exercised by the decedent, and the court held that property which passed by his will was subject to an estate tax under Sec. 302(f) (now Sec. 811(f)).

Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, is another case where there was no question as to the power of the decedent to make a testamentary disposition of property. The case presents a two-fold situation; in one the power was not exercised by the decedent and in the other it was. As to the former, the court stated, 316 U.S. at page 59, 62 S.Ct. at page 927: "And viewing Section 302(a) in its background of legislative, judicial, and administrative history, we cannot reach the conclusion that the words 'interest * * * of the decedent at the time of his death' were intended by Congress to include property subject to a general testamentary power of appointment unexercised by the decedent."

While, as previously noted, no mention was made of the insurance proceeds in decedent's will, it is true under the stipulated facts that such proceeds, together with other property, were turned over by her executor to the trustee designated in her will. Whether the executor had a right to do so is a question not before us and we think it is of no significance. If the decedent had the power by will to direct that the insurance proceeds be paid to a trustee, it would seem logical to conclude that she could have directed payment to Bill Jones, or anybody else. Can there be any rational supposition that the insurance company could have been required to recognize such a direction on the part of the decedent? And the fact is, of course, that the proceeds were paid to the executor not by reason of decedent's will but because of the contractual obligation with her father. Any abortive attempt by decedent to make a disposition of the insurance proceeds

effective after her death is not determinative of the issue for decision. The controlling factor is, as we have heretofore attempted to show and which we think is irrefutable, that the decedent was without such power. In Estate of Rogers v. Commissioner, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134 the court stated, "And that is precisely what the federal estate tax hits—an exercise of the privilege of directing the course of property after a man's death." Here, any attempt by decedent to exercise the privilege (power) to direct the course of the insurance proceeds after her death was of no effect; she was not possessed of power to do so.

The judgment of the district court is reversed and the cause remanded with directions that a judgment be entered in accordance with the views herein expressed.