P. C. KEETER, as Executor of the Estate of Bessie Love Shaw, Deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 462.

United States District Court, N. D. Florida, Gainesville Division.

March 8, 1971.

Thomas C. O'Bannon, Jacksonville, Fla., and Louis O. Gravely, Jr., Ocala, Fla., for plaintiff.

James M. Stabler, Tax Division, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM DECISION

MIDDLEBROOKS, District Judge.

This action is of a civil nature to compel the refund of estate taxes paid to the Internal Revenue Service by the plaintiff and arises under Title 28, United States Code, Section 1346 and under Section 7422 of the Internal Revenue Code of 1954, as amended. The plaintiff in this action seeks recovery of federal estate taxes alleged to have been erroneously and illegally assessed against, imposed upon and collected from the plaintiff by the defendant.

## FINDINGS OF FACT

1. Daniel A. Shaw, the husband of the decedent Bessie Love Shaw, died on May 4, 1930. At the date of his death he was the owner-insured of Mutual Life Insurance Company of New York Ordinary Life Policy No. 2570673, having a face amount of $100,000.00, which was included in his estate for federal estate tax purposes. There was in effect at the date of the insured's death a Mode of Settlement specified in such Policy which provided that the insurance proceeds should be held under four identical Supplementary Contracts issued to Bessie L. Shaw, the wife of the insured, and to his three daughters, share and share alike. The provision entitled "Modes of Settlement" states:

"Unless otherwise specified in making the election of one of the above modes of settlement the amount payable upon the death of the payee under mode of settlement (1) * * * shall be payable to the payee's executors or administrators."

The insured husband of decedent elected mode of settlement number (1) which provided for payment of interest to the payee under the Supplementary Contracts in annual installments during the lifetime of the payee. Since the insured husband did not elect any other mode of payment of the principal upon the death of the payee, the net sum is payable to the executors or administrators of the payee.

2. As a result of the beneficiary designation in the husband's life insurance policy, Supplementary Contract No. SN 2941 of the Mutual Life Insurance Company of New York was issued to Bessie L. Shaw in the principal sum of $25,080.09. Bessie L. Shaw was entitled to income at a fixed rate for her lifetime to be paid in monthly payments and upon her death the Supplementary Contract provided that the principal sum, with accrued interest, should be paid to the executors or administrators of Bessie L. Shaw. The Mode of Settlement in the life insurance contract and the Supplementary Contract itself provided that the Supplementary Contract and the proceeds accrued therefrom should not be "Transferrable or subject to commu-

tation, anticipation or encumbrance, or in any way subject to the debts of any beneficiary or payee, or to legal process except as otherwise provided by law."

3. Bessie Love Shaw died on March 10, 1964, a resident of Gainesville, Alachua County, Florida. P. C. Keeter, plaintiff here, is a resident of Alachua County, Florida, and is the duly qualified, appointed and acting Executor of the Estate of Bessie Love Shaw, deceased, currently in probate in the County Judge's Court of Alachua County, Florida. Proceeds from said Supplementary Contract were duly paid to the decedent's executor in the amount of $25,096.51. The will of decedent provides in pertinent part as follows:

"All the rest, residue and remainder of my property of every kind and description and wherever located, and any property over which I may hold the power of appointment or distribution, I give, devise and bequeath in three equal portions for the following beneficiaries: * * *."

The decedent named her three daughters as the beneficiaries in her will.

4. Plaintiff duly filed with the District Director of Internal Revenue Service, Jacksonville, Florida, its Estate Tax Return, Form 706, and paid the estate taxes shown on such return to be due and owing. In said return the plaintiff revealed the existence of Mutual Life Insurance Company of New York Supplementary Contract SN 2941 and showed the amount of settlement proceeds of such Contract to be $25,096.51. The plaintiff did not include the amount of settlement proceeds in the gross estate of the defendant. The issue in this case, therefore, is whether such amount is includible in the gross estate of the decedent for federal estate tax purposes.

5. Upon audit of the decedent's tax return by the Internal Revenue Service, several adjustments were proposed and all adjustments, with the exception of the tax consequences due to the existence of said Supplementary Contract, were agreed upon. The Internal Revenue Service contends that the existence of said Supplementary Contract increases the gross estate to the extent of $25,096.51 and thereby results in an increase in estate taxes due from the plaintiff.

6. The plaintiff subsequently executed and filed Form 890–AD dated September 2, 1967, a copy of which is attached to the complaint filed herein in which all adjustments proposed by the Internal Revenue Service were accepted, except that plaintiff reserved the right to prosecute a claim for refund based on the existence of said Supplementary Contract. A total deficiency of $21,899.-32 shown in the Form 890–AD was paid to the Internal Revenue Service on September 23, 1967, along with $3,062.70 in interest. The estate has paid to date the following amounts of tax and interest to the Internal Revenue Service:

| DATE | TAX | INTEREST |
|---|---|---|
| June 10, 1965 | $119,200.42 | |
| June 15, 1965 | 2,488.50 | 4.08 |
| October 23, 1967 | 21,899.32 | 3,062.70 |
| | $143,588.24 | $3,066.78 |

Such amounts paid include the tax and interest asserted to be due by the Internal Revenue Service because of the existence of said Supplementary Contract.

7. Part of the plaintiff's payment on October 23, 1967 to the Internal Revenue Service was estate taxes allocable to said Supplementary Contract in the amount of $7,779.92 with interest on such amount from June 10, 1965 to October 23, 1967, in the amount of $1,106.04. Plaintiff, therefore, claims $8,885.96 with interest at 6% per annum from October 23, 1967 until the date of refund.

8. On January 24, 1968, the plaintiff filed a proper claim for refund, Form 843, requesting a refund of estate taxes in the amount of $12,373.45 due to an overpayment of estate taxes allocable to the existence of said Supplementary Contract. A copy of the plaintiff's claim for refund is attached to the complaint. On August 9, 1968, the Internal Revenue Service disallowed the claim for refund filed by the plaintiff, a copy of which disallowance is attached to the

complaint. Plaintiff timely filed this suit to compel refund of excessive estate taxes paid.

9. The decedent's interest in the Supplementary Contract SN 2941 was to receive monthly interest on the principal sum at 3% per year during her lifetime. She had no other interest in such Supplementary Contract. The decedent's entire interest in the contract expired at the time of her death. The proceeds consisting of the principal sum plus accrued interest due under the Supplementary Contract at the death of Bessie L. Shaw were paid to her Executor solely by reason of a contract existing between Daniel A. Shaw, her husband, and the Mutual Life Insurance Company of New York in which the decedent had no interest whatever, except to receive during her lifetime a fixed rate of interest.

10. The plaintiff has incurred and will incur additional attorney's fees, administration costs and expenses in connection with the prosecution of his claim for refund and suit resulting therefrom.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of this action. Title 26, United States Code, Section 7422.

2. The questions presented are whether the decedent possessed a pre-1942 power of appointment as a result of the insurance contract between the insurer and her husband and whether, if she possessed such a power, the power was exercised in her will.

3. Section 2041 of the Internal Revenue Code of 1954 provides that the gross estate of a decedent shall include the value of all property with respect to which a general power of appointment created on or before October 21, 1942 is exercised by the decedent by will or by other disposition which is of such a nature that if it were a transfer of property owned by the decedent such property would be includible in the decedent's gross estate under Sections 2035–2038.

This section defines a power of appointment as "a power which is exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate. * * * "

4. The decedent, Bessie L. Shaw, at the time of her death owned no interest in said Supplemental Contract, except the right to receive interest thereon at a fixed rate and this right expired at the time of her death. An income interest expiring at death is not an interest subject to federal estate tax since it does not survive the death of the decedent. The decedent could not in any way vest herself or any other person during her lifetime with any of the principal of the proceeds held under the Supplementary Contract and she had no right to designate a beneficiary or in any other way exert any control over the proceeds held subject to the Supplementary Contract. The decedent, therefore, owned no interest in the Supplementary Contract or in the proceeds payable thereunder. Consequently, the decedent possessed no interest at the date of her death arising from the existence of the Supplementary Contract and subject to taxation under Section 2033.

5. The decedent at the time of her death had no right to appoint the insurance proceeds since the Supplementary Contract specifically provided that the insurance company must pay the proceeds upon her death to her executor or administrator. There was no other alternative and the decedent could not have changed the payment which the insurance company was obligated to make. Since no Power of Appointment existed in the decedent at the time of her death no testamentary provision could be relevant. Even if the proceeds pass under the decedent's will (and the Court's finding herein makes it unnecessary to rule on such point) there can be no exercise of a power if none existed. There is, consequently, no interest existing under Section 2041 which should be included in the decedent's gross estate. Second National Bank of Danville, Ill. v. Dallman, 209 F.2d 321 (7th Cir. 1954).

6. It is argued by the United States that *Second National Bank*, supra, is factually distinguishable from the instant case and, in any event, represents an erroneous interpretation of the law. The United States also states that one year after the Court of Appeals for the Seventh Circuit decided *Second National Bank,* supra, the Internal Revenue Service issued Rev.Bull. 55–277, 1955–1 Cum. Bull. 456, stating it would not follow that decision in the disposition of cases with similar fact situations. It is the opinion of this Court that *Second National Bank*, supra, is not distinguishable and establishes the law of this case.

7. The argument that the Internal Revenue Service issued a ruling stating that it would not follow the rule laid down in *Second National Bank*, supra, is not persuasive. That decision was rendered by a Federal Appellate Court more than seventeen years ago. It has apparently not been questioned by any decision of any Federal Court. Further, if Congress wished to broaden the definition of "general power of appointment" during this period of seventeen years Congress could have done so.

8. It is argued that since decedent had the power in her will to determine the persons who would ultimately receive the proceeds of the supplemental contract, that a "power" did exist in decedent. However, this position is untenable in light of a literal interpretation of the holding in *Second National Bank*, supra, that decedent possessed no power of appointment in an almost identical fact situation.

9. The plaintiff has, therefore, overpaid estate taxes in the amount of $8,885.96 and is entitled to the refund of such sum from the defendant, along with interest thereon at 6% per annum from October 23, 1967 until the date of refund.

10. In addition, the plaintiff is entitled to deduct as an estate tax deduction under Section 2053 of the Internal Revenue Code of 1954, reasonable attorney's fees, administration costs and expenses in connection with the prosecution of its claim for refund and the litigation resulting therefrom.

Judgment shall be entered upon submission in view of the statements of counsel that counsel could agree on the amount of the judgment.