461 F.2d 714
 72-1 USTC P 12,839
 P. C. KEETER, as Executor of the Estate of Bessie Love Shaw,
Deceased (Aden Keeter, appointed administrator de Bonis Non
of the estate of Bessie Love Shaw, deceased, be substituted
in the place and stead of P. C. Keeter, deceased), Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 71-2644.
 United States Court of Appeals,
Fifth Circuit.
 April 14, 1972.
 
 William H. Stafford, Jr., U. S. Atty., Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., James Stabler, Atty., Fred B. Ugast, Asst. Atty. Gen., Meyer Rothwacks, Gilbert Andrews, William S. Estabrook, III, Loring W. Post, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.
 Thomas C. O'Bannon, Jacksonville, Fla., Louis O. Gravely, Jr., Ocala, Fla., for plaintiff-appellee.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 As with most tax disputes, the facts of this case are not in issue. We have before us only the correctness of the district court's legal conclusions. We often preach that taxation is practical and realistic. As we search for substance over form, once in a while our preachments become prattle in application as a "greyness" enters our decisions. But we find the government's claim here to be endowed with unusual pellucidity and the taxpayer's claim to be unusually factitious. Without a quiver of equivocation, we conclude that an insurance settlement option which granted the proceeds from the life insurance of the decedent taxpayer's husband to "the executors or administrators" of the decedent is includable in her gross estate as a general power of appointment for the purpose of computing estate taxes.
 
 
 2
 The decedent's husband, Daniel A. Shaw, died in 1930, the owner of an insurance policy on his own life in the amount of $100,000, which he had purchased in 1919. In 1926 Mr. Shaw (the "insured" or the "settlor") elected a settlement option which provided that the insurance proceeds should be held under four identical supplementary contracts, issued to the decedent, Mrs. Bessie Love Shaw, and their daughters in equal shares. By the terms of this settlement option decedent was to receive interest on her share of the proceeds for her life, and a supplementary contract in the amount of $25,000 was accordingly issued to the decedent. The settlement option also expressly provided that the principal and accrued interest from the proceeds were to be paid to "the executors or administrators" of the decedent at her death. Mrs. Shaw, domiciled in Florida, died in 1964, leaving a will, duly probated, that read in part:
 
 
 3
 "All the rest, residue and remainder of my property of every kind and description and wherever located, and any property over which I may hold the power of appointment or distribution, I give, devise, and bequeath in three equal portions for [her daughters]."
 
 
 4
 Pursuant to the 1926 settlement election, the insurance company paid the $25,000 to the decedent's executor. The executor did not include that sum in the decedent's gross estate when he filed the estate tax return, and the Commissioner assessed a deficiency. The executor paid the deficiency and recovered a refund in the lower court. 323 F.Supp. 1093. The government has appealed that decision, and we reverse.
 
 
 5
 General powers of appointment created on or before October 21, 1942, are includable in the gross estate of a decedent only if they are "exercised," 26 U.S.C.A. Sec. 2041(a) (1). Compare 26 U.S.C.A. Sec. 2041(a) (2), regarding powers created after October 21, 1942. See Helvering v. Grinnell, 1935, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825; 2 U.S. Cong. & Adm. Serv. 1530, 82nd Cong., 1st Sess. (1951). The issue in this case is whether or not the settlor's election of annuities-cum-payments to the decedent's executor constitutes such a power of appointment for purposes of the estate tax. It is acknowledged by all parties that if the settlement option elected by the decedent's husband constituted a general power of appointment, the power was "created," for tax purposes, prior to 1942. See United States v. Turner, 8 Cir. 1961, 287 F.2d 821 (Blackmun, J.). And it is also conceded by all that the power of appointment, if that is what it really was, was "exercised," for tax purposes, by a specific provision in the decedent's will that distributed any of her property held under power of appointment to her three daughters in equal shares.[1]
 
 
 6
 We will look to applicable state law to determine whether the substance of the property interests created by the settlor fits within the federal tax law's definition of a power of appointment, but we emphasize that it is the substance of the state law that is relevant and not any labels that a state or the parties might attach to that substance. See 26 C.F.R. Sec. 20.2041-1[2]; Jenkins v. United States, 5 Cir. 1970, 428 F.2d 538, cert. denied, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59; see also Morgan v. Commissioner of Internal Revenue, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585:
 
 
 7
 "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."
 
 
 8
 The law in this case is as clear as the Internal Revenue Code and attendant regulations are ever wont to be. A general power of appointment is defined by the Code as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate," 26 U.S.C.A. Sec. 2041(b) (1) [emphasis added]. The Code definition is cast in the disjunctive, so that the donee is in possession of a general power of appointment if he or she is able to exercise that power in favor of any one of the four groups of beneficiaries specified in the statute. Jenkins v. United States, supra; 2 Mertens, The Law of Federal Gift and Estate Taxation Sec. 19.09 (1959). A donee possesses a general power of appointment when he or she holds
 
 
 9
 ". . . such a power of control as to be able to apply it to his own benefit, or the benefit of his creditors, to dispose of it by will, or to appoint it to his estate or the creditors of his estate, or to consume it without restriction."
 
 
 10
 Security-Peoples Trust Co. v. United States, W.D.Pa.1965, 238 F.Supp 40 at 45. See Helvering v. Grinnell, supra.
 
 
 11
 Mrs. Shaw's executor argues that the settlement option elected by Mrs. Shaw's husband was not a general power of appointment, resting his argument principally upon the assertion that Mrs. Shaw did not receive solely from that settlement option, and at the moment of the death of the insured, the unrestricted power to dispose of the insurance proceeds. Mrs. Shaw's power to distribute the funds came, the executor concludes, from the laws of Florida which empowered her to make a will and not from her husband's settlement option. In sum, the executor's argument is that because the proceeds would have to receive their direction under the will and not directly under the insurance clause, the option could not be called a power of appointment at the time of the insured's death. The executor's argument is unrealistic at best, conclusory at worst. We conclude that the making of a will was merely a conduit, not a rheostat, in the legal authority that ran between the decedent and the insurance option.
 
 It is clear that
 
 12
 "[a] power is regarded as 'general' when it is not restricted by the donor to particular objects or beneficiaries, though the method of exercising it may be restricted and limited to a testamentary paper."
 
 
 13
 Blackburne v. Brown, 3 Cir. 1930, 43 F. 2d 320 at 322; see also Whitlock-Rose v. McCaughn, 3 Cir. 1927, 21 F.2d 164. We would add that a grant of distributory suzerainty over a fund is a general power of appointment within the habitat of the estate tax if the decedent holds the power to direct the funds freely and without restriction, regardless of the source of the fund. The principal or face amount of the insurance contracts formed the corpora of the power of appointment, but the manner of distribution came only upon the death and by the direction of the one who was designated by the settlor. Mr. Shaw, through his insurance policy, was not the director of the fund. It was the will of Mrs. Shaw that spread the largesse, and Mr. Shaw, by placing the proceeds in the hands of Mrs. Shaw's executors, simply named the decedent as the director of the fund. The settlor "created" a general power of appointment, for estate tax purposes, when he elected to place the residuum of the insurance proceeds into a position from which the decedent could appoint freely and without restriction. The fact that the position chosen by the donor was one formed by a previously-existing legal right of the decedent donee, in this case the statutory right to make a will, does not vitiate at all the practical and realistic consequences of the original grant from the settlor. See generally "Tax Evasion Through Settlement Options: Another Defeat for Substantial Ownership in Estate Taxation." 64 Yale L.J. 137 (1954).
 
 
 14
 Granting the residuum of the insurance proceeds to Mrs. Shaw's executors was tantamount to granting the residuum directly to Mrs. Shaw, subject only to the proviso that she appoint the fund by her will. Had the funds been expressly left for Mrs. Shaw's unfettered distribution by will, the fact that the grant was a power of appointment would be beyond doubt, even though her right to make a will arose only under a previously-existing state statute. Blackburne v. Brown, supra; Whitlock-Rose v. McCaughn supra; Jenkins v. United States, supra; United States v. Bank of Clarksdale, 5 Cir. 1965, 346 F.2d 638. Similarly, if the settlor had granted the insurance proceeds to a trust terminable at his wife's death over which his wife was sole trustee with sole power to distribute trust funds, we feel that the grant would clearly be a power of appointment and taxable as such, even though the trust itself might have been set up by a third party before Mr. Shaw ever purchased his insurance policy. It is the unrestricted power to direct the proceeds that is critical to the power of appointment, whether the director be called a testator, a trustee, or a donor. A director by any other name is still a director. See Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.
 
 
 15
 It appears to this court that Mrs. Shaw was granted at her husband's death an absolute power of appointment over the insurance proceeds, the power to be exercisable by her will at her death. We are aware of the fact that the Seventh Circuit was presented with a set of circumstances substantially similar to those we face, and that that court held for the taxpayer. Second National Bank of Danville, Ill. v. Dallman, 7 Cir. 1954, 209 F.2d 321. In Dallman the insured (the decedent's father) selected an insurance settlement option that required the insurance company to pay interest to the decedent for life and then gave to the decedent the right to designate a contingent beneficiary to take the proceeds at the decedent's death. If the decedent failed to designate her beneficiary expressly, the insurance company was to pay the proceeds to the decedent's "executors, administrators, or assigns." The decedent never designated a beneficiary. Her will provided that her entire residuary estate should be held in trust but did not mention specifically the insurance proceeds. In accordance with the contract with the decedent's father, the insurance company paid the funds to the decedent's testamentary trustee, and the government included the proceeds in the decedent's gross estate for estate tax purposes. The Seventh Circuit, reversing the district court, held that the proceeds were not includable in the decedent's gross estate:
 
 
 16
 "[T]he proceeds were payable at decedent's death not by her direction but by that of her father as contained in the contract."
 
 
 17
 209 F.2d at 324 [emphasis added]. We are unable to distinguish the Dallman case on its facts, and we are thus compelled to disagree with that case on the law. In essence, we hold that there is no substantive difference between directly granting the power to dispose of property and placing that same property in such a position that the donee is able to dispose of it to her benefit by means of some power that existed prior to or separate from the settlor's grant.
 
 
 18
 It appears to this court that the settlors in Dallman and in our case granted absolute powers of appointment to their respective donees subject only to the proviso that the donees were to exercise their powers of appointment by means of a will. We know of no state in which the executor is empowered to do whatever he chooses with a decedent's estate. Certainly Florida law required Mrs. Shaw's executors to do precisely what Mrs. Shaw directed in her will. See Fla.Stat.Ann. Sec. 733.01: In Re Estate of Rosenthal, 1966, Fla.App., 189 So.2d 507; Whitfield v. Whitfield, 1937, 127 Fla. 74, 172 So. 711. Thus, under the state law that defines the substance of Mrs. Shaw's directive authority over the insurance proceeds, the executor could not act as an insulator preventing Mrs. Shaw from spreading the insurance bounty as she chose, nor was the executor an independent agent with respect to her estate. She specifically directed that any powers of appointment be exercised in a certain way, and the executors, as required by law, complied. Therefore, the substance of the settlement option was to grant an absolute power of appointment of the insurance principal and interest to Mrs. Shaw, exercisable at her death by her will. It is quite true that Mrs. Shaw could not dispose of the insurance proceeds to her own benefit immediately after the death of her husband. But a power of appointment need not be exercisable only immediately or only in favor of the donee. The power is also taxable if it is exercisable at some point in favor of the grantee's estate. See 26 U.S.C.A. Sec. 2041(b) (1); Fidelity-Philadelphia Trust Co. v. McCaughn, 3 Cir. 1929, 34 F.2d 600, cert. denied, 280 U.S. 602, 50 S.Ct. 85, 74 L.Ed. 647. The specific direction of a will is just such an exercise, see Henderson v. Rogan, 9 Cir. 1947, 159 F.2d 855, cert. denied, 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1854, and therefore within the taxable ambit of the Code. Like the Commissioner see Rev.Rul. 55-277, 1955-1 Cum.Bull. 456, we feel compelled to differ respectfully with the analysis of the Seventh Circuit. Mrs. Shaw, like the donee in Dallman, could appoint the insurance fund by her will to anyone she wanted, and the executors were required by law to effectuate that appointment with the fund that the insurance company was required by law to pay to the estate.[3]
 
 
 19
 Mrs. Shaw's executor argues that there was not a power of appointment resulting from the settlement option because the insured always had the right, prior to his death, to alter the policy or to terminate it altogether. While it is true that the insured could have changed the settlement option in any number of ways, that fact is irrelevant at this point. The fact that the power was revocable does not mean that it did not exist, any more than the fact that a will is always revocable or changeable means that the will does not exist. A revocable power of appointment that is not revoked by the settlor becomes, upon his death, a full-fledged power of appointment. What the settlor might have done with the power that he granted is of no relevance to this case.
 
 
 20
 Mrs. Shaw's executor also asserts that Mrs. Shaw held only a life interest in the proceeds at the critical time of the insured's death. Again we must disagree. At the moment of the decedent's death, Mrs. Shaw also had the remainder of the fund to dispose of as she saw fit at her death through her will. Of course the fund could conceivably have had nothing in it by the time of the decedent's death. But that possibility, in addition to being very remote, could never operate to reduce the legal effect of the power of appointment conferred by the settlement option. Had there been no remaining proceeds at the decedent's death, the power of appointment would have been no less a power when viewed at the time of its creation. Of course it would not have had any taxable value, but it would still have been a power of appointment.
 
 
 21
 In brief, Mrs. Shaw's husband directed the funds to Mrs. Shaw's executor, and Mrs. Shaw directed the executor. In practical terms, Mr. Shaw simply put the insurance proceeds into a receptacle from which his wife could appoint them, but it is Mrs. Shaw who substantively directed the funds to the ultimate recipients. And the fact that Mrs. Shaw spoke through her executor does not make her voice any less her own. For estate tax purposes, the critical question is whether the decedent directed her property after her death, not how that property got into the position from which she could direct it. In terms of the actual authority of direction over the insurance proceeds that was conferred and exercised, we see no substantive differences among an express grant of a general power of appointment, a grant utilizing a previously-existing trust with the donee as the sole trustee an express grant of a general power of appointment exercisable only by will, and a grant employing a previously-existing law that allows the donee to distribute property freely by will. In each instance the power realistically conferred and exercised is the power to direct the fund as the donee sees fit at the point of her death, or in legalese the power to appoint. Abrasive as it may seem to the donees of the power,
 
 
 22
 ". . . that is precisely what the federal estate tax hits-an exercise of the privilege of directing the course of property after . . . death."
 
 
 23
 Estate of Rogers v. Helvering, 1943, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134, 137. Mrs. Shaw exercised her general power of appointment by specifically directing her executors in her will, and her estate is therefore taxable on the value of the exercise. The judgment of the district court is reversed.
 
 
 24
 Reversed.
 
 
 25
 JOHN R. BROWN, Chief Judge (specially concurring):
 
 
 26
 I concur fully in the decision and opinion. I add this only to emphasize that one of the concerns we feel in trying to be realistically practical in the divination of the sometime esoteric tax statutes-that the "little" case before us is a test case masking "big" problems-is eliminated here. Once again the binary bits of the revenue services' RIRA computer under its coded issue numbers 2041.01-00, 2041.03-00, 2041.05-00, and 2041.13-00 prove that there are no other pending cases involving this Sec. 2041 problem. Thanks to the modern marvel we know this is not the proverbial federal case. It is just Mrs. Shaw's case. First Nat'l Bank of Birmingham, Ala. v. United States, 5 Cir. 1966, 358 F.2d 625, 631 (concurring opinion).
 
 
 
 [1]
 Compare DePass v. Kansas Masonic Home Corp., 1938, 132 Fla. 455, 181 So. 410, and Pattillo v. Glenn, 1942, 150 Fla. 73, 7 So.2d 328, where the Florida courts confronted the considerably more difficult question of whether or not a general residuary clause would suffice to exercise a power of appointment under Florida law
 
 
 [2]
 "The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations."
 
 
 [3]
 The Government argues in the alternative that the proceeds of the insurance policy are includable in Mrs. Shaw's gross estate because they are "property" in which Mrs. Shaw has a substantial interest within the purview of 26 U.S.C.A. Secs. 2031, 2033, in that the proceeds were "beneficially owned by [Mrs. Shaw] at the time of [her] death," 26 C.F.R. Sec. 2033-1(a). Although Dallman discussed this theory and found for the taxpayer, we do not feel compelled to reach the section 2033 theory at all. Our holding with regard to section 2041 is sufficient to dispose of the case