Estate of Eli L. Garber, Deceased, Farmers Bank & Trust Company of Lancaster, Pennsylvania, Executor v. Commissioner.
Estate of Garber v. Commissioner
Docket No. 60201.
United States Tax Court
T.C. Memo 1958-121; 1958 Tax Ct. Memo LEXIS 105; 17 T.C.M. (CCH) 646; T.C.M. (RIA) 58121; June 27, 1958
Richard S. Doyle, Esq., Lincoln Liberty Building, Philadelphia, Pa., for the petitioner. William C. Baskett, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency in estate tax in the amount of $602.05 has been determined by the Commissioner against the petitioner. Petitioner claims an overpayment of estate tax in the amount of $26,516.55. The issues for our decision *106 are (1) whether respondent has erred in including the amount of $1,720.14 in the gross estate as the value of a chose in action for services rendered by decedent at the time of his death, (2) whether, assuming a decision in favor of petitioner on issue 1, this Court has jurisdiction to apply the principle of equitable recoupment with respect to income taxes paid on the above amount where a deficiency in income taxes for that year has not been determined, and (3) whether decedent's interest in two pension trusts created by his employers constitute property includible in his gross estate. Findings of Fact All facts which have been stipulated are so found. Farmers Bank & Trust Company of Lancaster, Pennsylvania, is the sole surviving executor of the estate of Eli L. Garber, deceased, who died testate on June 16, 1951, a resident of Lititz, Pennsylvania. The executors filed the Federal estate tax return with the collector of internal revenue for the first district of Pennsylvania at Philadelphia, Pennsylvania, on September 15, 1952. Eli L. Garber was actively employed as president of Penn Dairies, Inc., from 1925 to the date of his death. At a meeting held on December 13, 1950, the *107 board of directors of Penn Dairies, Inc. (hereinafter referred to as Penn), by resolution fixed the salary of Eli L. Garber (hereinafter referred to as the decedent) for the fiscal year ended September 30, 1951, at $50,000. As an executive of Penn, he was paid semimonthly. June 16, 1951, was the first day of a semimonthly pay period of Penn. He was president of and on the payroll of Penn on June 16, 1951, the date of his death. On July 3, 1951, Penn paid to the executors the amount of $1,720.14 as decedent's salary for the period June 16, 1951, to June 30, 1951, inclusive, and the corporation withheld income tax of $363.20 in addition to said amount, making a total payment of salary of $2,083.34. There is no resolution or other provision in the minute book of the meetings of the board of directors of Penn for the period ended November 30, 1951, authorizing a gift by the corporation to the estate of Eli L. Garber. Nor, other than the provision fixing the annual salary of decedent, is there a provision for the payment to the estate of decedent of salary for services not rendered by him. The decedent was born on February 11, 1864, and was 87 years of age at the time of his death *108 on June 16, 1951. On September 26, 1941, Penn established a pension plan by executing an Employees Pension Trust Agreement, pursuant to which an Employee Pension Board was established and a Formula of Benefits was adopted. The same is true, as of September 29, 1943, with respect to Garber Ice Cream Company. The pension plan of Penn was amended from time to time and prior to decedent's death was last amended on November 22, 1950, as of August 21, 1950, and was at all times pertinent to this proceeding in effect and qualified under section 165 of the Internal Revenue Code of 1939. The same is true with respect to the pension plan of Garber Ice Cream Company except that the date of its last amendment was November 30, 1946. So far as pertinent to the instant proceeding, the provisions of the pension plans of Penn and Garber Ice Cream Company (hereinafter referred to as Garber) are substantially identical and differ only in size of benefits and in that the pension plan of Garber was not amended, as was the pension plan of Penn on November 22, 1950, as of August 21, 1950, to provide for payment of death benefits, in the absence of a beneficiary designated by the employee, to the surviving *109 spouse, children, parents, brothers, sisters, or in the discretion of the Pension Board to the estate of a deceased employee. Under each of the pension plans employees are eligible for participation upon completion of 2 years' continuous service. The pension plans provide for annual pensions to employees who continue employment to age 65, or, in respect of employees who are 60 years of age upon eligibility, at the attained age of such employee upon completion of 5 years' additional service, and upon completion of a minimum of 10 years' service. Under each of the pension plans the amounts of the annual pension are determined according to the employees' years of service by a percentage of average basic compensation, provided the maximum pension payable will not exceed a stated amount per annum, which amounts are to be payable for the life expectancy of such employees according to the Standard Annuitants Mortality Table of 1937; or an employee may elect a 10-year certain and continuous annuity or a life pension to continue throughout the lifetime of the employee for an amount annually as may be procurable from a legal reserve life insurance company at the time of such employee's retirement *110 based upon the accumulated reserves to the credit of such employee, or as may be determined by acturial computations. Under the adopted formula of each pension plan the reserves accumulated after employees attain eligibility are set aside and earmarked for such employees' credit from the corporations' annual donations and improved at the rate of 3 per cent. The pension plans provide that the right to benefit to the extent of accumulated reserves credited to employees vests in such employees on an increasing percentage basis, depending upon years of service, until upon completing 10 years of service the right to benefit from 100 per cent of the accumulated reserves credited to an employee becomes vested in the employee. Under each of the pension plans, when an employee terminates his employment prior to retirement for any reason whatsoever, except for service in the armed forces of the United States, disability, leave of absence, or except when for cause shown the accumulated reserves are forfeited, the portion of the accumulated reserves credited to such employee are paid over in one lump sum or in installment to the employee, or retained to provide an immediate pension or a pension *111 to begin at any time on or before the employee reaches age 65. Each of the pension plans provides that, upon application by the employees and approval by the Pension Board, employees may make loans from the pension fund. Each of the pension plans provides that, with permission of the employer, an employee may retire with proportionate pension prior to retirement age, provided such employee has completed 10 years or more of service. Each of the pension plans provides that an employee, with approval of or upon the request of the employer, may continue his employment beyond retirement age, and any funds to the credit of such employee as improved by compound interest are retained in the trust fund enabling a larger pension to begin at a later date, or such pension may commence on a full pension basis or on a partial pension basis during the continuation of such employment, according to the election of the employee. Each of the pension plans provides that upon the death of an employee the accumulated reserves earmarked for an employee and contributed by the employer, less loans, advances, benefits, pension payments, or cash payments previously made, will be paid as death benefits. *112 The pension plan of Penn, as amended on August 21, 1950, provides that the death benefits are to be paid to the employee's designated beneficiary or beneficiaries and, in the absence of a designated beneficiary to beneficiaries, then to any surviving spouse, children, parents, brothers, sisters, or the deceased employee's estate, according as the Pension Board shall direct. The pension plan of Garber provides that the death benefits are to be paid to such spouse, heir or heirs, dependent or dependents of the deceased employee as the employee shall designate, and upon failure of the employee to designate a beneficiary, then to the estate of such deceased employee. Penn and Garber reserved the rights to discontinue annual donations to the pension plans or to discontinue the plans. However, upon any such discontinuance the Pension Boards have the option and discretion to continue the pension funds to provide proportionate benefits or to pay over each employee's net interest in the funds to the employee. Under each of the pension plans, the Pension Board could amend and modify the pension plan, subject to approval and ratification of the corporation, provided that no such amendment *113 revest any portion of the funds in the corporation or reduce the amount of reserves then to the credit of any participating employee, retired employee or beneficiary of any deceased employee or transfer accrued interest from one class of participating employees to another class of participating employees or make possible a diversion of the then accumulated funds, or any part thereof, to any purpose other than the exclusive benefit of the employees of the corporation and their beneficiaries. The employees of Penn and Garber made no contributions to the respective pension funds from their salaries or otherwise. The decedent became eligible to participate in the pension plans of Penn and Garber upon the establishment of the plans in 1941 and 1943, respectively. He was 77 years of age upon the establishment of the pension plan of Penn in 1941, and reached pension age of 82 in 1946. He was 80 years of age upon the establishment of the pension plan of Garber in 1943, and reached pension age of 85 in 1948. The decedent had completed more than 10 years of service with Penn and Garber when the respective pension plans were established, and his right to benefit to the extent of 100 per *114 cent of the pension plans became vested in him as the accumulated reserves were credited to him from the corporations' annual donations. The decedent had the right under each of the pension plans to designate a beneficiary or beneficiaries of the death benefits. On August 4, 1950, he executed and filed with the Pension Boards of Penn and Garber documents designated "Beneficiary and Employee Information." Each of the documents provides: "4. a. ( ) Pay or distribute to: any or either of my children, my children's spouses, my grandchildren, their spouses and issue, or to the survivor of them, in such proportions and with payments in such amounts and at such times as the Pension or Retirement Board shall determine is for the best interests of the said beneficiaries, and as such distribution and payments may be amended by said Board from time to time." The decedent continued his employment with Penn and Garber after reaching his respective pension ages, and the funds to his credit under each pension plan were retained in each pension fund and improved by compound interest. At his death, the decedent's rights under each of the pension plans had become vested, irrevocable, and nonforfeitable *115 except for cause shown. Payments of benefits under the pension plans to decedent, his estate, named beneficiaries, or other beneficiaries were compulsory. The decedent received no retirement benefits, nor did he make any loans under either of the pension plans. As of the date of decedent's death, the accumulated reserves under the adopted formulae as improved by interest and set aside, earmarked and credited to the decedent totaled $60,823.14 under the pension plan of Penn and $24,714.12 under the pension plan of Garber. Under the terms of the pension plans the respective Pension Boards directed payments to be made to three of the decedent's children as follows: "From Employees' Pension Plan of Penn.: Erla Garber Hess
$20,274.38
Mary Garber Heckel
20,274.38
J. Ferry Garber
20,274.38
$60,823.14 "From Employees' Pension Plan of Garber: Erla Garber Hess
$ 8,238.04
Mary Garber Heckel
8,238.04
J. Ferry Garber
8,238.04
$24,714.12" and on December 18, 1951, the trustees of the pension trusts of Penn and Garber made distributions and payments to the decedent's children in accordance with the resolutions of the Pension Boards. Because *116 of his death June 16, 1951, decedent did not occupy the office of president nor render any services to either Penn or Garber subsequent to that date, but did occupy the office of president with respect to each on said date. No deficiency notice has been issued by respondent with respect to the income tax return of petitioner for the period June 16 through September 30, 1951. Opinion Issue 1 Petitioner contends the amount of $2,083.34, consisting of $1,720.14 paid by Penn to the executors of the decedent's estate on July 3, 1951, and $363.20 withheld by Penn for income tax, was a gift and therefore not includible in decedent's gross estate. Respondent contends the amount represents the value of a chose in action owned by decedent at his death for salary due, owing and unpaid him by Penn for the period beginning June 16, 1951, and ended June 30, 1951, and that said value represents a portion of his gross estate and is therefore taxable under the estate tax provisions of the Internal Revenue Code of 1939. It is stipulated by the parties that the amount was paid by Penn on the date aforesaid "as salary" for that period. Though it was paid "as salary," in our view it nevertheless, *117 with one exception, was a gratuity based upon no consideration whatsoever. The exception is the amount of the payment attributable to decedent's occupancy of the office of president of Penn for one day, June 16, 1951. The amount attributable to one day is $138.89 which represents the value of a chose in action owned by decedent on the date of his death for salary due and payable to him from Penn. We have arrived at the above conclusion because we think it obvious that Penn could not have intended to pay decedent a salary for services it was aware he would never perform. Its president had died June 16, 1951, and could not thereafter and did not thereafter occupy the office of its president. His salary was appurtenant to his occupancy of that office and in consideration of his availability for the rendition of such services as might from time to time be required of him in that capacity. It is true that salaries as distinguished from wages are not measured by the amount of the services rendered but they are nevertheless in consideration of services rendered or to be rendered and relate to the type and quality of such services rather than their quantity. However, both constitute compensation *118 and are in consideration of services. Penn was a corporation which could act only under its charter and through direction of its board of directors. While there is no showing here with respect to any charter power which would authorize Penn to pay a salary for services it knew could never be rendered, we have found as a fact that its board of directors at no time authorized such action. Its action in fixing the decedent's salary at the rate of $50,000 cannot in any manner be so construed. We know of no general provision of the law, state or Federal, which would authorize payment of a salary by a corporation without consideration. No consideration exists here for the payment of salary by Penn to the decedent for the period beginning June 17, 1951, through June 30, 1951. We cannot come to any other conclusion but that the portion of $2,083.34 in excess of $138.89, or $1,944.50, was a gratuity. Issue 2 In the income tax return for the estate of Eli L. Garber for the period June 16 through September 30, 1951, there was included in income the amount of $2,083.34 as salary paid to the estate of the decedent by Penn. Of the foregoing amount $363.20 represented income tax withheld by *119 Penn. The respondent has not determined any deficiency in the income tax of the estate for the above-mentioned period and the petitioner states on brief that the statute of limitations bars recovery by way of claim for refund of any portion of the tax paid for such period. In the foregoing situation and relying on Bull v. United States, 295 U.S. 247, and Stone v. White, 301 U.S. 532, the petitioner urges that we should apply the principle of equitable recoupment and allow it credit against any deficiency found by us with respect to any issue in this case to the extent of income tax paid by it which is attributable to that portion of the "salary" which is in reality a gratuity. Relying on Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, which affirmed an unreported decision of the Board of Tax Appeals, and the fact that no deficiency has been determined in the income tax of the estate for the period June 30 through September 30, 1951, the respondent contends that we are without jurisdiction to grant the application sought by petitioner. The petitioner contends that the Gooch case has no application here because it does not limit the *120 application of the equitable doctrine of recoupment as established in the Bull case. We think that the Supreme Court in the Gooch case made it clear that the jurisdiction of the Board of Tax Appeals was to be determined by the Internal Revenue Code of 1939 and not by general equitable principles, that under the Code the Board's jurisdiction was confined to a determination of the amount of deficiency or overpayment for the particular year as to which the Commissioner determines a deficiency and as to which determination the taxpayer seeks a review, that the Board had no power to order a refund or credit should it find that there had been an overpayment for the year in question and that although the Board in determining a deficiency in respect of any taxable year was authorized to consider such facts with relation to the taxes for other taxable years as might be necessary correctly to redetermine the amount of such deficiency, it had no jurisdiction, in concluding that the tax for any other taxable year had been overpaid or underpaid, to alter the tax liability for such other year. We think the Supreme Court also made it clear that the principle of equitable recoupment applied by it *121 in the Bull and Stone cases could not be applied by the Board of Tax Appeals because of the extent to which its jurisdiction was circumscribed by the Code. Although section 504 of the Revenue Act of 1942 changed the name of the Board of Tax Appeals to The Tax Court of the United States, that section provided that the "jurisdiction, powers, and duties" of the Tax Court "shall be the same as by existing law provided in the case of the Board of Tax Appeals." Obviously, therefore, the change in name did not effect any change in jurisdiction. In view of what has been said above, we are of the opinion that the decision of the Supreme Court in the Gooch case is applicable and controlling here. Accordingly, we hold for the respondent as to this issue. Issue 3 Due to the length and complexity of the documents involved in the pension plans here in issue, we have summarized them in some detail in our findings of fact. At the outset we are convinced that at all times pertinent hereto it was the intention of both Garber and Penn to create and maintain in full force and effect a valid and subsisting pension trust plan which would not only comply with the requirements of the Internal Revenue *122 Code and meet with the approval of the Commissioner of Internal Revenue but would be so executed and administered consistently thereafter as to remain in that status. On the strength of the fact that the pension trust agreements, the summary of benefits thereunder and, in fact, the designation of beneficiaries by employees are replete with provisions which on their face would seem to indicate that all of the rights of employees, and indeed their very right to designate beneficiaries under the plans, are dependent solely on the decisions of the respective Pension Boards thereunder, petitioner argues, in effect, that the rights of employees under the plans never vested in them, and particularly the decedent herein prior to his death, and were so nebulous in character as not to constitute property within the meaning of section 811 of the 1939 Code and Regulations 105 of the Commissioner. In the first place, if petitioner's contention is true, the motives of Penn and Garber in creating and administering the pension trust would be obviated. The plan would not then with sufficient certainty comply with the provision of the Internal Revenue Code as being created and administered for the *123 exclusive benefit of the employee. Indeed, its contention carried to its ultimate is that the Pension Board could divest any employee of his benefits under the pension trust for any reason whatsoever and upon its mere whim. We do not believe this to be true. It is true that the Pension Boards were obviously intended to have and execute over-all supervision of the administration of the trusts, but this is not to say that they had absolute power and authority with respect to the rights of employees to benefits under the plan. The trust instruments are by and large identical in this respect. Generally, no payment might be made by the trustee for any benefit under either plan until the boards had become satisfied and concluded that a particular employee was authorized by the terms of the trust instruments and the formulae of benefits to a fixed amount of retirement income, death benefits, or a lump sum settlement upon retirement prior to retirement age. They also had the general power in the absence of a designation of beneficiaries by an employee in their sole discretion to pay the benefits of the plan credited to an employee to any or all beneficiaries within designated classes, or to *124 his estate, but they certainly had no right under any stretch of the imagination, where an employee or his beneficiaries were by the terms of the pension plan entitled to payment, to refuse such payment entirely. Only in the event certain conditions prevailed, expressly set forth in the respective trust instruments, were they so empowered. Generally, those provisions and conditions existed only in cases where an employee was guilty of disloyalty or misconduct toward his employer to the monetary loss of the latter. Petitioner argues that, because certain provisions of the trust instruments and the formulae of benefits expressly provided that an employee at no time had a vested interest in the trust assets except those represented by his own contributions (there were no such contributions involved here), this alone makes it necessary to conclude that petitioner's decedent had no vested property right appurtenant to the pension trusts involved which he could appoint and the value of which could therefore be included in his gross estate. We do not so read the trust instruments. Taken by their four corners this provision and others of like character are safeguards to the employer should *125 it at any time determine to terminate the pension plan and, more particularly, to safeguard both the employer and the employee with respect to action by creditors of either. It is however plainly apparent that, having in mind the employer's over-all intention of creating and administering a valid and subsisting pension plan, even though decedent made no contribution to the trust, it was the intention of the employers that by creation of the pension plans their employees, and decedent in particular, would be induced to continue their employment and that such continued employment was at least partially in consideration of rights and benefits vested in them under the pension plans as through such continued service increased amounts were credited and earmarked to them and improved by investment and compounding of interest. The argument cannot seriously be made here that, even though legal title to the assets of the trust could not vest in the employee until paid to him, his rights to benefits under the plans could not and did not vest in him in direct proportion to the amounts credited to him from time to time. Those benefits were susceptible of valuation at any time throughout decedent's *126 employment and subsequent to his retirement age and until the date of his death. That valuation in each instance can be determined as of the date of decedent's death by the amounts credited to him upon the books of the respective pension trusts which are, with reference to Penn, $60,823.14 and, with respect to Garber, $24,714.12. Petitioner's decedent having designated classes of beneficiaries to whom his benefits under the pension plans were to be paid at his death, we find nothing on this record to indicate that it was within the power of either Pension Board to deny payment of such benefits in accordance with that designation and, in fact, each did make such payments in accordance therewith. The pension plans plainly were intended to and did place in petitioner's decedent the power to appoint his vested interest in the benefits to which he was entitled at his death under each plan. These vested rights in the decedent constituted property within the meaning of section 811 of the 1939 Code in the values above set forth and are includible in those amounts as assets of his gross estate. Decision upon this issue is for the respondent. Decision will be entered under Rule 50.