ESTATE OF ROBERT B. MARGRAVE, DECEASED, THE UNITED STATES NATIONAL BANK, EXECUTOR AND TRUSTEE OF THE ROBERT B. MARGRAVE REVOCABLE TRUST, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2210–76.     Filed October 10, 1978.

*Jeffrey L. Stoehr*, for the petitioner.
*Wayne B. Henry*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $11,176.45 in the estate tax of petitioner, subject to credit for State death taxes paid. The issue is whether the gross estate of decedent should include the proceeds of an insurance policy on the life of decedent.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Decedent, Robert B. Margrave, died testate on April 29, 1973. At his death, he resided in Omaha, Nebr. His last will and testament, dated June 16, 1966, was admitted to probate by the County Court of Douglas County, Nebr., on June 14, 1973. Petitioner filed its Federal estate tax return with the Internal Revenue Service Center, Ogden, Utah, on January 14, 1974.

The United States National Bank of Omaha (the bank), a corporation with its principal place of business in Omaha, Nebr., on the date the petition was filed herein, is the executor of decedent's estate. The bank is also the trustee of the Robert B. Margrave Revocable Trust (the trust), created by decedent on June 16, 1966.

Under the terms of the trust, decedent was the income beneficiary and, during his lifetime, had the unqualified right to modify or revoke the trust.

On January 29, 1970, Glenda Margrave, decedent's wife, applied for a 20-year decreasing term life insurance policy on decedent's life. Decedent, as the insured, signed the application. The policy was issued by Western Life Insurance Co. on March 12, 1970. Under the terms of the policy, the beneficiary was, in the absence of any change, "as designated in the application."

The bank, as trustee of the trust, was named beneficiary in the application.[1] The benficiary was never changed. During the term of the policy, i.e., the life of decedent, "all benefits, rights and privileges available or exercisable [under the policy]" were vested in decedent's wife as owner and she paid the premiums with her own funds.

Upon the decedent's death, the proceeds of the insurance policy in the amount of $84,583 were paid to the bank as trustee of the trust.

## OPINION

The question before us is whether the proceeds of insurance on the life of a decedent, which are payable to an inter vivos trust established by the decedent, are includable in the gross estate either under section 2042 or section 2041,[2] where (a) the decedent's wife was at all times the owner of all the rights under the policy, and (b) the decedent retained the unqualified right, during his lifetime, to modify or revoke the trust.

We turn first to the question of includability of the life insurance proceeds under section 2042, which provides in relevant part:

SEC. 2042. PROCEEDS OF LIFE INSURANCE.
The value of the gross estate shall include the value of all property—
(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.
(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

Respondent argues that decedent possessed at his death

[1] The application further provided that if the beneficiary was not "living," the proceeds would be payable to the estate of the insured. The estate could have become the primary beneficiary of the proceeds if the decedent had, prior to his death, either revoked the trust, i.e., so that it was not "living," or amended it to make his estate the remainderman and Mrs. Margrave had not changed the beneficiary designation. The respondent makes no argument that the proceeds should be includable in decedent's gross estate on account of such contingent designation. The trustee was named as beneficiary of other insurance policies on the life of the decedent which were included in decedent's gross estate because the decedent was the owner.

[2] All references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect on the date of death. In the notice of deficiency, respondent stated that sec. 2038 provided an alternative basis for his determination. On brief, respondent concedes that sec. 2038 is inapplicable to the proceeds in question.

sufficient "incidents of ownership" so as to require includability under section 2042(2)[3] and the regulations thereunder. We disagree.

The regulations specify that "the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense," and that the focus is on "the right of the insured or his estate to the economic benefits of the policy." Sec. 20.2042–1(c)(2), Estate Tax Regs.

As we see it, the key question is what power did decedent possess during his lifetime to control the disposition of the policy or of the proceeds. See *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7, 11 (1st Cir. 1966). Mrs. Margrave was the owner of the policy and as such "all benefits, rights, options and privileges available or exercisable [thereunder] during the lifetime of [decedent]" were vested in her. Those powers could be exercised without decedent's consent. See *Morton v. United States*, 457 F.2d 750, 754 (4th Cir. 1972). In this respect, the cases where the decedent's right to prevent a change in the beneficiary of a policy (either by way of a requirement of his consent or a veto power) was held to be an incident of ownership are clearly distinguishable. See *Commissioner v. Karagheusian's Estate*, 233 F.2d 197 (2d Cir. 1956), revg. on this issue 23 T.C. 806 (1955); *Schwager v. Commissioner*, 64 T.C. 781 (1975). Similarly distinguishable are those cases where the policies themselves were part of the corpus of a trust and the decedent-trustee, albeit only in his fiduciary capacity, had limited but irrevocable rights with respect to the policies or the proceeds thereof. Compare *Terriberry v. United States*, 517 F.2d 286 (5th Cir. 1975),[4] *Rose v. United States*, 511 F.2d 259 (5th Cir. 1975), *Estate of Lumpkin v. Commissioner*, 474 F.2d 1092 (5th Cir. 1973), revg. 56 T.C. 815 (1971), and *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th

---

[3]Respondent does not argue that the proceeds should be included in the gross estate by application of sec. 2042(1), and there is nothing in the record to indicate that the trust was under a legal obligation "to pay taxes, debts, or other charges enforceable against the estate." Sec. 20.2042–1(b)(1), Estate Tax Regs. See also *United States v. First National Bank & Trust Co. of Minneapolis*, 133 F.2d 886 (8th Cir. 1943); *Freedman v. United States*, 382 F.2d 742, 744 n. 5 (5th Cir. 1967).

[4]We recognize that, in this case, the decedent's power as trustee was substantively revocable in the sense that the decedent's widow, who was the grantor of the trust, could have removed him as trustee. See *Terriberry v. United States*, 517 F.2d 286, 289–290 (5th Cir. 1975). The critical fact, however, is that so long as he was the trustee, decedent had direct control of the policies and, thus, could be said to have incidents of ownership in the policies themselves within the meaning of the statute and applicable regulations. See sec. 2042; sec. 20.2042–1(c), Estate Tax Regs. In the instant case, the decedent had no such direct control. Cf. *Rose v. United States*, 511 F.2d 259, 265 n. 14 (5th Cir. 1975).

Cir. 1970), affg. 50 T.C. 915 (1968), with *Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir. 1977), and *Skifter v. Commissioner*, 468 F.2d 699 (2d Cir. 1972), affg. 56 T.C. 1190 (1971).

Prior to decedent's death, the designation of the trustee as beneficiary created only an expectancy that it would continue to remain such until the policy became payable. See *Farwell v. United States*, 243 F.2d 373, 377 (7th Cir. 1957). Thus, decedent's interest in the trust as regards the policy proceeds was merely a power over an expectancy subject to the absolute whim of the policy owner, Mrs. Margrave,[5] and was, by the terms of the trust itself, extinguished at the moment of his death. See *Estate of Pyle v. Commissioner*, 36 T.C. 1017, 1020 (1961), affd. 313 F.2d 328 (3d Cir. 1963). This simply does not constitute an incident of ownership.

Respondent next contends that decedent's power to modify or revoke the trust constituted a general power of appointment with the result that the proceeds of the policy are includable in his gross estate under section 2041.[6] Again, we disagree.

---

[5]Insofar as the record indicates, there was no agreement or understanding between decedent and Mrs. Margrave with respect to the disposition of the policy or of proceeds, and respondent has not made any suggestion along these lines. Any attempt to infer a prearranged agreement or understanding can rest only on an automatic inference based upon the marital relationship, a course which the Court has in the past declined to pursue. Cf. *Estate of Gutchess v. Commissioner*, 46 T.C. 554 (1966).

[6]Sec. 2041 provides in relevant part:

SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

\*    \*    \*    \*    \*    \*    \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised,or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

\*    \*    \*    \*    \*    \*    \*

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

(B) A power of appointment created on or before October 21, 1942, which is exercisable by the

Unquestionably, decedent's unqualified power to modify or revoke the trust falls within the scope of a general power of appointment. *Maytag v. United States*, 493 F.2d 995 (10th Cir. 1974); sec. 20.2041–1(b)(1), Estate Tax Regs. The question before us is whether, at the moment of decedent's death, there was "any property" to which that power of appointment attached. Thus, we need not concern ourselves with cases, relied upon by respondent, where the property was in existence and the issue was whether the instrument involved constituted a power of appointment (*Keeter v. United States*, 461 F.2d 714 (5th Cir. 1972);[7] *Sheaffer v. Commissioner*, 12 T.C. 1047 (1949)), or whether a power of appointment was created on or before October 21, 1942 (*United States v. Turner*, 287 F.2d 821 (8th Cir. 1961); *United States v. Merchants National Bank of Mobile*, 261 F.2d 570 (5th Cir. 1958); *Estate of Rosenthal v. Commissioner*, 34 T.C. 144 (1960)).

By the terms of the policy, the trustee had only the right to receive the proceeds and this right was subject to Mrs. Margrave's power, as the owner of the policy, to change the designation of the trustee as beneficiary. The trustee, therefore, did not have an enforceable right to the proceeds, as it might have had if the beneficiary designation had been irrevocable—a right which could have been treated as "property" subject to the decedent's power of appointment. Clearly, during his lifetime,

---

decedent only in conjunction with another person shall not be deemed a general power of appointment.

(C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person—

(i) If the power is not exercisable by the decedent except in conjunction with the creator of the power—such power shall not be deemed a general power of appointment.

(ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent—such power shall not be deemed a general power of appointment. For the purposes of this clause a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.

(iii) If (after the application of clauses (i) and (ii)) the power is a general power of appointment and is exercisable in favor of such other person—such power shall be deemed a general power of appointment only in respect of a fractional part of the property subject to such power, such part to be determined by dividing the value of such property by the number of such persons (including the decedent) in favor of whom such power is exercisable.

For purposes of clauses (ii) and (iii), a power shall be deemed to be exercisable in favor of a person if it is exercisable in favor of such person, his estate, his creditors, or the creditors of his estate.

[7]Contra, *Second National Bank of Danville, Illinois v. Dallman*, 209 F.2d 321 (7th Cir. 1954).

decedent did not have the ability to "enlarge or shift the beneficial interest" (see sec. 20.2041(b)–(1), Estate Tax Regs.) in "any property." He could not confer any benefit upon anyone, including himself or his creditors. As a consequence, prior to his death, decedent had no more than a power over an expectancy. See our discussion of the "incidents of ownership" issue at pp. 16–17 *supra*.

Nor do we think that decedent's death breathed life into his power of appointment. To be sure, that event terminated Mrs. Margrave's rights in the policy and the proceeds became payable to the trustee to be disposed of pursuant to the trust's terms. That event also terminated decedent's power to modify or revoke the trust. The fact is, however, that the right to the proceeds did not become vested in the trustee until death had actually occurred. Until that moment, Mrs. Margrave could have changed the beneficiary designation and destroyed decedent's control of the proceeds via the trust and, therefore, the capacity of the trustee to receive the proceeds.

In *Johnstone v. Commissioner*, 76 F.2d 55 (9th Cir. 1935), affg. 29 B.T.A. 957 (1934), the decedent was found to have a taxable general power of appointment with respect to property in trust, although the surviving donor retained a right to alter or modify the trust which terminated at the decedent-donee's death. However, that case is distinguishable since, unlike the situation herein, the trust corpus, i.e., the "property," was in existence at the time of the decedent-donee's death.

The situation herein is analogous to that which existed in *Connecticut Bank & Trust Co. v. United States*, 465 F.2d 760 (2d Cir. 1972). In that case, one of the issues was whether the value of an action for wrongful death was property "with respect to which the decedent [had] at the time of his death a general power of appointment." The applicable State law gave the right of action to the executor or administrator and provided that any recovery was to be distributed under the terms of the decedent's will. In holding for the taxpayer, the court stated "at the very least, property subject to a sec. 2041 power of appointment must be in existence prior to the time of the decedent's death." 465 F.2d at 764. See also *Lang v. United States*, 356 F. Supp. 546 (S.D. Iowa 1973); Rev. Rul 75–126, 1975–1 C.B. 296; Rev. Rul. 75–127, 1975–1 C.B. 297.

A further analogy can be found in cases involving the question

of includability of a death benefit payable by an employer to a beneficiary designated by a deceased employee, who had the right to change the designation, where the employer could modify or terminate the plan at any time prior to the employee's death. In *Dimock v. Corwin*, 19 F. Supp. 56 (E.D.N.Y. 1937), affd. on other issues 99 F.2d 799 (2d Cir. 1938), affd. 306 U.S. 363 (1939), the court concluded that, in such a situation, the employee had "merely a privilege extended to him by his employer, which was subject to withdrawal or modification at any time" (see 19 F. Supp. at 59), with the result that there was no property in which the decedent had an interest at the time of his death and, therefore, the death benefit was not includable in the decedent's gross estate under the provisions of section 302(a) of the Revenue Act of 1926 (the predecessor of section 2033). Subsequent cases recognize that the crucial distinction in this area is whether the decedent had irrevocable rights under the plan (see *Estate of Bahen v. Commissioner*, 305 F.2d 827, 831 (Ct.Cl. 1962); *Estate of Garber v. Commissioner*, 271 F.2d 97, 101–102 (3d Cir. 1959), affg. T.C. Memo. 1958–121)) or whether he possessed only a hope or expectancy that the plan would be continued (see *Estate of Albright v. Commissioner*, 42 T.C. 643 (1964), revd. on another issue 356 F.2d 319 (2d Cir. 1966); *Estate of Barr v. Commissioner*, 40 T.C. 227, 232–234 (1963); *Estate of Gamble v. Commissioner*, 69 T.C. 942, 947 (1978)). See also Lowndes, Kramer & McCord, Federal Estate and Gift Taxes, pp. 28–30 (3d ed. 1974). The fact that these cases were decided under section 2033 (or its 1939 Code predecessor), rather than section 2041, is not significant since it is necessary, under both sections, to determine whether there was "property" in existence at the decedent's death in which decedent had an interest (sec. 2033) or with respect to which the decedent had a general power of appointment (sec. 2041).

In sum, we hold that decedent's power of appointment, with respect to the proceeds of the policy involved herein, covered no more than an expectancy so that there was not "any property" to which it attached. Consequently, such proceeds are not includable in decedent's estate under section 2041.

Because of other adjustments in the notice of deficiency, which are not in issue herein,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

GOFFE, *J.*, concurring: I concur with the majority in all respects but, nevertheless, feel that additional explanation is needed as to the lack of existence of a prearranged plan. The trial judge, in his dissenting opinion, concludes that it is clear from the record that there was a prearranged plan to give the decedent the opportunity to direct disposition of the insurance proceeds. The record supports a contrary conclusion.

The application for insurance contains the signature of the decedent as insured and Mrs. Margrave as applicant but the record is silent as to when the document was executed by each.

The only direct evidence concerning the existence of a prearranged plan is the uncontradicted testimony of Solomon Schwartz, the insurance agent who sold the policy to Mrs. Margrave. He testified that Mrs. Margrave completed the questions on the application and signed it and that decedent signed the application as the insured.

On cross examination of Mr. Schwartz by counsel for respondent, the following dialogue is reported:

MR. HENRY: Was it ever expressed to you that also one of the reasons for the trust—naming the trust as beneficiary was a desire on the part of the decedent to control the proceeds?

A. No, not at all. Mrs. Margrave was going to be able to control her own proceeds and it's just simply that the trust coincided with her wishes. That had been set up by Robert Margrave for his own estate and rather than go through the expense of setting up another one that would be identical in wording, she used that one since he would—he would have already been gone if it was going to be exercised.

Q. And can life insurance be taken out without the insured approval or consent?

A. No, the insured must—the insured must be a party to it unless they're below the age of fourteen and a half, a child. Then a parent can do it for the child. But above fourteen and a half, the insured has to be a party to the contract.

Q. The only question I have still on my mind is the decedent—from the

other answer you gave me—the decedent didn't express any concern of having control over the proceeds at all?

A. None whatsoever.

Q. He didn't care if—no matter who was paid the proceeds, he never expressed any concern over that?

A. No, on his own policies he cared, but as far as the policy that was owned by his wife, she could have named the children individually if she wanted to. And he would not have cared.

Q. Or some distant relative, he never expressed any concern?

A. None whatsoever. And he would have no control of it. It wasn't his policy.

Q. He was willing to let the insurance be taken out on his life and paid to whoever without any concern of who it was being paid to?

A. Quite frankly, I wouldn't be concerned if my wife did it. If there's a deep love, you do what your spouse would want to do. You don't look for any motives.

Mr. Henry: Thank you.

The Witness: And there was a deep love here.

Mr. Henry: Thank you. I don't have any further questions.

[Tr. p. 22, line 8—p. 23, line 25.]

In view of Mr. Schwartz' testimony, it is not difficult to understand why respondent never requested a finding of fact in his brief that decedent and Mrs. Margrave had a prearranged plan for disposition of the insurance proceeds.

To conclude, as the trial judge does in his dissenting opinion, that there was a prearranged plan, he must disregard the testimony of Mr. Schwartz. Where evidence which is competent, relevant, and credible is uncontradicted, the Tax Court may not arbitrarily discredit or disregard it. *Banks v. Commissioner*, 322 F.2d 530, 537 (8th Cir. 1963). In my view, the testimony of Mr. Schwartz was not improbable, unreasonable, or questionable. We are, therefore, bound to accept his testimony as true. *Banks v. Commissioner, supra; Gilman v. Commissioner*, 65 T.C. 296 (1975), affd. per curiam 547 F.2d 32 (2d Cir. 1976). It follows that the record as a whole does not support a finding of fact that a prearranged plan existed.

Sterrett, *J.*, agrees with this concurring opinion.

Fay, *J.*, dissenting: I respectfully dissent from the majority's conclusion that the proceeds of the insurance policy on decedent's life are not includable in his gross estate under section

2041. In my opinion, the decedent herein died possessing a general testamentary power of appointment over such proceeds.

As a general rule, section 2041(a) requires the inclusion in the gross estate of the value of any property subject to a general power of appointment. In this regard, a "general power of appointment" is defined as a power under which the donee can appoint the property subject to the power to himself, his estate, or the creditors of either. Sec. 2041(b). The statutory rule of inclusion operates whether the power in question is an inter vivos or a testamentary general power. Under the facts of the present case, I believe the decedent had such a general testamentary power with respect to the insurance proceeds.

At the outset, I note that it is common knowledge that revocable living trusts of the type created by the decedent herein are heavily laden with testamentary attributes and are oftentimes used as substitutes for a will. For instance, in a typical situation, the settlor of a revocable trust will reserve unto himself a life estate in the trust and upon his death the corpus will thereafter be distributed in accordance with the terms of the trust. As in the case of a will, the terms of a revocable trust are changeable until the moment of the settlor's death. Moreover, many of the dispositive provisions in a revocable trust, like those of a will, take effect at the settlor's death. Indeed, certainly most, if not all, dispositive provisions contained in a will could be provided for in a revocable trust. Specifically, a settlor of a trust, as a testator of a will, could direct through the terms of the instrument that upon his death the corpus is payable to his estate, his creditors, or the creditors of his estate. This latter power is as much a general testamentary power as is one exercisable by a will.

In the instant case, the decedent's unqualified power to modify his trust's terms was, as the majority correctly concludes, a general power with respect to any property placed in the trust by one other than the decedent. Further, because this power to modify was unqualified, it was necessarily exercisable in an inter vivos and a testamentary fashion.[1]

In reaching its conclusion with respect to section 2041, the majority reasons that there was no "property" to which the

---

[1]The term "power of appointment" is broadly defined to include "all powers which are in substance and effect powers of appointment." Sec. 20.2041–1(b)(1), Estate Tax Regs.

decedent's power attached. From reading the opinion, I am unable to ascertain whether this conclusion is premised on the fact that Mrs. Margrave had the power during the decedent's lifetime to revoke his power of appointment by changing the beneficiary; or whether it is based upon the fact that the actual proceeds were not in existence during the decedent's lifetime; or a combination of these two facts. In any event, to the extent that either of these factors could be considered relevant in deciding this case (and I question whether they are),[2] they would be important *only in ascertaining whether the decedent died possessing an inter vivos general power* over the proceeds. In other words, because both of these factors, upon which the majority bases its decision, disappeared at the moment of the decedent's death, they have no significance in determining whether he died possessed of a general *testamentary* power over such property.

Briefly stated, a general testamentary power is a power under which the decedent has broad control over the devolution of property subject to the power after his death. I believe the decedent herein had such a power. To begin with, upon the decedent's death the policy proceeds were irrevocably part of the trust corpus and thereafter subject to the trust's terms. Until his death, the decedent had the power to modify the terms of the trust directing that the corpus be payable after his death to whomever he chose. Simply put, the decedent's power was no greater and no less than would have existed had the proceeds been payable to his estate and thereafter to whomever he appointed by will. In view of the realities of the situation, the conclusion that the decedent had a general testamentary power over the insurance proceeds is inescapable.

In its discussion of this point, the majority states:

---

[2]Mrs. Margrave's power to change the beneficiary of the policy made decedent's general power revocable during his lifetime. However, the fact that a general power is revocable during a decedent's lifetime by the donor of the power does not affect includability under sec. 2041 so long as such power becomes irrevocable at death. *Keeter v. United States*, 461 F.2d 714, 720 (5th Cir. 1972); *Johnstone v. Commissioner*, 29 B.T.A. 957 (1934), affd. 76 F.2d 55 (9th Cir. 1935). In addition, the *right* to receive insurance proceeds, which right the decedent could appoint under the terms of his trust, is no less an item of property than a note, an account receivable, or a parcel of real estate.

Properly viewed, by virtue of Mrs. Margrave's power to change the beneficiary, the decedent during his lifetime had a revocable general power of appointment over certain property, viz., the *right* to receive the insurance proceeds. This power of appointment became irrevocable upon his death. In my opinion, these facts make the present case indistinguishable from *Keeter v. United States, supra,* and *Johnstone v. Commissioner, supra.*

Nor do we think that decedent's death breathed life into his power of appointment. To be sure, that event terminated Mrs. Margrave's rights in the policy and the proceeds became payable to the trustee to be disposed of pursuant to the trust's terms. That event also terminated decedent's power to modify or revoke the trust. The fact is, however, that the right to the proceeds did not become vested in the trustee until death had actually occurred. Until that moment, Mrs. Margrave could have changed the beneficiary designation and destroyed decedent's control of the proceeds via the trust and, therefore, the capacity of the trustee to receive the proceeds.

Unfortunately, from reading this it is difficult to discern exactly what constitutes the basis of the majority's conclusion. Certainly it cannot be the fact that the decedent's power to modify or revoke the trust terminated at his death. As I noted above, a decedent's power to modify or revoke his will terminates at his death. Surely the majority is not suggesting that this fact has any bearing on the question of whether a testator died possessed of a general testamentary power. Likewise, the fact that the decedent's power was revocable by Mrs. Margrave up until his death does not mean that it did not exist. Had Mrs. Margrave changed the beneficiary before the decedent's death nothing would have been includable in his estate under section 2041. However, that is *not* what actually occurred. The hard facts are that Mrs. Margrave did not revoke the power and consequently such power became irrevocable upon the decedent's death. What Mrs. Margrave *might* have done with the power is simply of no relevance. *Keeter v. United States*, 461 F.2d 714, 720 (5th Cir. 1972).

Finally, in distinguishing *Johnstone v. Commissioner*, 76 F.2d 55 (9th Cir. 1935), affg. 29 B.T.A. 957 (1934), the majority again makes the misstatement that there was no "property" in existence at the time of the decedent's death. As I have previously noted, the *right* to receive insurance proceeds is as much an item of "property" as the right to receive payment on a note. The contingent nature of this right during the decedent's lifetime is relevant *only*, if at all (see n. 2 *supra*), in determining whether the decedent had an inter vivos general power. In any event, at the moment of death this right became fixed and irrevocable and passed in accordance with the decedent's general testamentary power embodied in the terms of his trust.

In enacting section 2041, Congress believed that a broad power to control the disposition of property was tantamount to

its ownership for estate tax purposes. In the instant case, the decedent had such a power over the proceeds of the insurance.

DAWSON, SIMPSON, IRWIN, and WILBUR, *JJ.*, agree with this dissenting opinion.

QUEALY, *J.*, dissenting: The opinion of the majority produces an absurd result. In order to reach this result, the opinion threads its way through a "mine field" of adverse decisions.[1] Merely to distinguish those cases does not lead to the opposite conclusion. For that the majority relies on *Connecticut Bank & Trust Co. v. United States*, 465 F.2d 760 (2d Cir. 1972).

In the *Connecticut Bank & Trust Co.* case, the "property" sought to be taxed was the proceeds of an action under a wrongful death statute. A claim against a tort-feasor on account of the death of a taxpayer does not arise until the taxpayer dies. On the other hand, a policy of life insurance gives rise to contractual right at the time the policy is taken out. It is "property" with respect to which the decedent may enjoy "incidents of ownership." In the case of life insurance, the death of the taxpayer merely fixes the time of payment, not the right itself. In a wrongful death claim, it is the death of the taxpayer that gives rise to the cause of action. Until that event, there is nothing.

If the proceeds of the insurance in question had been payable to the estate of the decedent, such proceeds would have been includable as a part of such estate for purposes of the estate tax, notwithstanding any of the so-called contingencies relied upon by the majority. I find it difficult to reach a different result merely because the proceeds are payable to a revocable trust under the complete control and dominion of the decedent rather than directly to him or to his estate.[2]

Furthermore, I fail to see the necessity for reaching an absurd

---

[1]*Terriberry v. United States*, 517 F.2d 286 (5th Cir. 1975); *Rose v. United States*, 511 F.2d 259 (5th Cir. 1975); *Estate of Lumpkin v. Commissioner*, 474 F.2d 1092 (5th Cir. 1973), revg. 56 T.C. 815 (1971); *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir. 1970), affg. 50 T.C. 915 (1968); *Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir. 1977); *Estate of Skifter v. Commissioner*, 468 F.2d 699 (2d Cir. 1972), affg. 56 T.C. 1190 (1971); *Keeter v. United States*, 461 F.2d 714 (5th Cir. 1972); *Second National Bank of Danville, Illinois v. Dallman*, 209 F.2d 321 (7th Cir. 1954); *Estate of Sheaffer v. Commissioner*, 12 T.C. 1047 (1949); *Johnstone v. Commissioner*, 76 F.2d 55 (9th Cir. 1935).

[2]Under our tax laws, since *Helvering v. Clifford*, 309 U.S. 331 (1940), the short-term or revocable trust is regarded as the alter ego of the decedent.

result in this case. If not includable under section 2042(1), the proceeds of insurance would nevertheless be includable under section 2042(2). The phrase "incidents of ownership" for purposes of this section encompasses the right to designate whom shall enjoy the proceeds of the policy. That right need not be vested or absolute. *Terriberry v. United States*, 517 F.2d 286 (5th Cir. 1975); *United States v. Merchants National Bank of Mobile*, 261 F.2d 570 (5th Cir. 1958).

In recognition of the fact that the estate tax provisions likewise are overlapping in their reach, I also believe that the proceeds would be taxable under section 2041. The designation of the revocable trust as a recipient of the proceeds of the policy, coupled with the power of the decedent over that trust, constituted nothing less than a general power of appointment with respect to the proceeds of the policy. The power was "general" in that it was wholly unrestricted as to whom, how, or where the decedent might direct the proceeds.

I am not persuaded by the argument that the decedent merely had an "expectancy" or that the right of the decedent to direct the proceeds of the policy could be revoked or terminated by his wife, the owner of the policy. In prescribing the reach of the estate tax, the Congress has not been deterred by such considerations. The real question is whether, at the time of his death, the decedent was possessed of the power to direct the proceeds of the policy. It is clear that he was.

Furthermore, there is nothing in this record from which it could be inferred that the decedent's wife would, contrary to decedent's intentions, deprive the decedent of his right to designate to whom would be paid the proceeds of the insurance. In order for her to obtain a policy of insurance on decedent's life, it was necessary for the decedent to consent to and to join in the application for such insurance. *The decedent filled out the application form.* Logic would lead to the inference that decedent had a voice in the disposition of the proceeds. This was not a plan that could be evolved without the mutual agreement and consent of both the owner of the policy and the insured.

It is clear from the record that the designation of the trust as beneficiary resulted from a prearranged plan which gave

decedent the opportunity to direct the proceeds.[3] If the right to direct such proceeds had been embodied in the mode of settlement, the proceeds would clearly be taxable as part of the estate. To insulate the selection process by setting up a revocable trust which accomplishes the same result does not change the character of the transaction. See *Keeter v. United States*, 461 F.2d 714 (5th Cir. 1972); contra, *Second National Bank of Danville, Illinois v. Dallman*, 209 F.2d 321 (7th Cir. 1954)..

SIMPSON, *J.*, agrees with this dissenting opinion.

CHABOT, *J.*, dissenting: The majority conclude that the proceeds of the life insurance policy in question are not includable in the value of decedent's gross estate. I believe that the policy proceeds are includable in the value of decedent's gross estate under section 2042(1), and so I respectfully dissent.

Section 2042(1)—set out in full in the majority opinion—provides that the value of decedent's gross estate shall include the value of all property receivable by the executor as insurance under policies on the life of the decedent. There being no question that the proceeds were "insurance under policies on the life of the decedent," the critical determination is whether the policy proceeds were "receivable by the executor."

In this case, where decedent, "during his lifetime, had the unqualified right to modify or revoke the trust" (see the findings of fact in the majority opinion), the designation of the trustee of the trust as beneficiary of the insurance policy serves the same testamentary purpose as the designation of the executor of decedent's estate as the beneficiary. If life insurance proceeds are not included in the value of the gross estate under these circumstances, then section 2042(1) is a dead letter. Where a policy owner now designates a decedent's estate as beneficiary, in the future the policy owner will substitute as beneficiary a trust wholly controlled by decedent.

It is a commonplace that the courts should avoid interpreting

---

[3] I have no difficulty reaching this conclusion notwithstanding the testimony of the insurance agent set forth in Judge Goffe's concurring opinion. It is pure hearsay, immaterial to the legal issue presented, and as a substitute for the testimony of Mrs. Margrave, who was not called by petitioner as a witness, has no probative value. Petitioner has the burden, and if Mrs. Margrave's intent is a material fact, has failed to meet that burden. Her absence raises a presumption against the petitioner.

a statutory provision in such a manner as to deprive it of meaning.

This Court and other courts held that proceeds of insurance policies (1) can properly be treated as receivable by the executor even though they are in fact receivable by another,[1] (2) can properly be treated as receivable by another even though they are in fact receivable by the executor,[2] and (3) can properly be treated as not being "insurance."[3] The courts in all these cases looked to the substance of the situation to give effect to the distinctions drawn by the Congress.

The majority opinion, in note 3 thereof, states that there is nothing in the record to indicate that the trust was under a legal obligation to pay taxes, debts, or other charges enforceable against the estate, quoting section 20.2042–1(b)(1), Estate Tax Regs. These regulations merely follow the substance-over-form approach taken by the *Morton-Mason* line of cases noted above (note 1 of this opinion). The concept of looking to the substance of a situation is not limited to this line of cases or these regulations.

The majority's dismissal of the section 2042(1) consideration concludes with a reference to *United States v. First Nat. Bank*, 133 F.2d 886 (8th Cir. 1943), and *Freedman v. United States*, 382 F.2d 742, 744 n. 5 (5th Cir. 1967).

In *United States v. First Nat. Bank, supra*, the court held that where a Mr. Smedal named as beneficiary of life insurance policies a testamentary trust created by his will for the benefit of his wife and daughter, the policy proceeds were not included in the value of Mr. Smedal's gross estate under section 302(g) of the Revenue Act of 1926 as insurance proceeds "receivable by the executor," but were included in the value of Mr. Smedal's gross estate under that section as insurance proceeds "receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." The following characteristics of the situation in *First Nat. Bank* indicate why that case is distinguishable from the instant case.

---

[1]E.g., *Bintliff v. United States*, 462 F.2d 403 (5th Cir. 1972); *Estate of Matthews v. Commissioner*, 3 T.C. 525 (1944); *Estate of Mason v. Commissioner*, 43 B.T.A. 813 (1941); *Morton v. Commissioner*, 23 B.T.A. 236 (1931).

[2]*Proutt's Estate v. Commissioner*, 125 F.2d 591 (6th Cir. 1942), revg. 41 B.T.A. 1299 (1940); *Commissioner v. Jones*, 62 F.2d 496 (6th Cir. 1932), affg. 20 B.T.A. 441 (1930); *Lucky v. Commissioner*, 2 B.T.A. 1268 (1925).

[3]*Helvering v. LeGierse*, 312 U.S. 531 (1941).

(1) Under section 302(g) of the Revenue Act of 1926, a $40,000 exclusion applied to insurance proceeds "receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." The issue in *First Nat. Bank* was not whether the insurance policy proceeds were includable in the value of Mr. Smedal's gross estate. The court there stated, "The narrow question for solution is whether the proceeds of the * * * policies are 'receivable by the executor' of decedent's estate or by 'other beneficiaries' within the meaning of sec. 302(g), *supra*." 133 F.2d at 887–888. The danger of interpreting section 302(g) of the Revenue Act of 1926 into oblivion did not present itself to the Circuit Court of Appeals. The issue of *who* is the effective beneficiary of the policy proceeds—an issue quite appropriate when the only insurance policy proceeds included in the value of a decedent's gross estate under the predecessors of section 2042(1) were those purchased by the decedent on the decedent's life, and when *all* such policy proceeds were so included (although some subject to an exclusion)—is not relevant to the issue of whether a decedent has the ability to make a testamentary disposition of the policy proceeds—the focus of section 2042.[4]

(2) The cases relied upon in *First Nat. Bank* also do not support the majority in the instant case. All of these cases either are substance-over-form cases (which, I suggest, support inclusion in the value of the gross estate) or are distinguishable for the reasons described in the immediately preceding paragraph. In *Helvering v. LeGierse*, 312 U.S. 531 (1941), the Supreme Court determined that an arrangement which took the form of a life insurance policy was not in substance "insurance," and so the proceeds of the arrangement were not includable in the value of the gross estate under section 302(g) of the Revenue Act of 1926.[5] The decisions in *Proutt's Estate v. Commissioner*, 125 F.2d 591 (6th Cir. 1942), and *Boston Safe Deposit & T. Co. v. Commissioner*, 100 F.2d 266 (1st Cir. 1938), involved the same

---

[4]The Revenue Act of 1942, section 404, amended sec. 811(g), I.R.C. 1939—a predecessor of sec. 2042—by replacing the "purchased by decedent on the life of decedent" test with a triple-pronged "testamentary disposition" test: policy proceeds (1) receivable by the executor or the estate, (2) purchased by premiums paid for by decedent, or (3) in which decedent at death had incidents of ownership, are includable in the value of decedent's gross estate. See S. Rept. 77–1631, pp. 234–235, 1942–2 C.B. 504, 676–677.

[5]The Supreme Court held in *LeGierse* that the amounts were, however, includable under sec. 302(c), Revenue Act of 1926, as a transfer to take effect in possession or enjoyment at or after death.

determination of which clause of section 302(g) of the Revenue Act of 1926, applied, as was made in *First Nat. Bank*. The decisions in *Webster v. Commissioner*, 120 F.2d 514 (5th Cir. 1941), *Commissioner v. Jones*, 62 F.2d 496 (6th Cir. 1932), and *Lucky v. Commissioner*, 2 B.T.A. 1268 (1925), were likewise involved with that determination, but also involved the effects of State statutes providing that under certain circumstances life insurance policy proceeds could not be reached by the decedent's creditors. No such statute is involved in the instant case.

(3) The insurance policy in the instant case was taken out by Mrs. Margrave. In *First Nat. Bank*, the policies were taken out by Mr. Smedal, the decedent in that case, who "intended that his wife and daughter should be the beneficiaries, and not the executor." 133 F.2d at 888. The rationale of *First Nat. Bank* and the cases cited by it with respect to the legislative intent underlying section 302(g) of the Revenue Act of 1926—a rationale which is based on decedents' motives—is not in conflict with inclusion under section 2042(1) in the instant case, when that rationale is recast in light of the present state of the law of Federal estate taxation and the context of the facts found in the instant case.

The other case cited by the majority on the section 2042(1) point, *Freedman v. United States, supra,* is similarly unresponsive to the problem presented by the instant case. In *Freedman,* 382 F.2d at 744 n. 5, the court stated:

Since Mr. Freedman was the executor, this case might appear to fall within sec. 2042(1), which makes life insurance proceeds includable in the gross estate to the extent that they are "receivable by the executor." However, the proceeds were not received by Mr. Freedman in his capacity as executor but rather as named beneficiary.

I have no difficulty with the court's proposition that policy proceeds receivable by the executor may not be "receivable by the executor" within the meaning of section 2042(1) if they are receivable by the executor in a capacity other than that of executor. It does not follow, however, that policy proceeds not receivable by the executor are *never* "receivable by the executor" within the meaning of section 2042(1). That proposition is inconsistent with the *Morton-Mason* line of decisions (note 1 of this opinion) and section 20.2042–1(b)(1), Estate Tax Regs.

There is no dispute that, if Mrs. Margrave had designated the executor of decedent's estate as the beneficiary, then the

proceeds would be included in the value of the gross estate in the instant case. This is so even though decedent appears to have had no ownership interest in the policy and even though the proceeds (as distinguished from the policy itself) were not in existence while decedent lived. The common sense of the situation is that it is property which decedent can dispose of in a testamentary manner.

I submit that the substance of what occurred in the instant case is not different from the substance of the above hypothetical. Here, too, decedent was enabled to dispose of the proceeds of the policy in a testamentary manner, because of his "unqualified right to modify or revoke the trust." True, that right could be exercised only during lifetime, but such is equally the case with a will or testament. True, Mrs. Margrave could defeat decedent's disposition by changing the beneficiary, but such is equally the case with a designation of the executor as the beneficiary—a designation that would produce an inclusion in the gross estate.

I would hold that the life insurance policy proceeds receivable by the Robert B. Margrave Revocable Trust, under the circumstances of the instant case, are to be treated as proceeds receivable by the executor, and therefore that these proceeds are includable in the value of decedent's gross estate.

SIMPSON, *J.*, agrees with this dissenting opinion.